The Illinois Central Railroad Company

*v.*

Thomas C. Cozby, Admr.

*Opinion filed June 18, 1898.*

1. Appeals and Errors—*Supreme Court does not weigh the evidence in suits at law.* The refusal of an instruction to direct a verdict for the defendant railroad company for want of proof of ordinary care by the plaintiff does not raise the question of the sufficiency of the evidence to show ordinary care for consideration by the Supreme Court, but whether there was evidence tending to prove that fact.

2. Evidence—*ordinary care may be established by circumstantial evidence.* In an action by an administrator against a railroad company for causing the death of his intestate, the plaintiff must show deceased was exercising ordinary care for his safety; but such fact may be established by circumstantial as well as direct evidence.

3. Same—*what evidence tends to prove negligence in failing to fill spaces between ties.* Evidence that spaces between ties on a railroad track were not filled to the surface for a distance of some ten or twelve feet, where there was no necessity for leaving them unfilled, and that at the point where plaintiff's intestate met his death the unfilled space was six inches deep, tends to prove negligence on the part of the company in failing to fill such spaces.

4. Instructions—*when instruction in action for negligence is misleading.* In an action against a railroad company for causing the death of the plaintiff's intestate, an instruction that the jury should find for the plaintiff, if they believed, from the evidence, that the deceased, while in the discharge of his duties as switchman and using due care for his safety, "was killed in the manner and form as charged in the declaration," is misleading, in failing to require proof of defendant's negligence.

5. Same—*misleading instruction may be corrected by instructions of other party.* A misleading instruction, not positively erroneous, may be cured by instructions of the other party which so clearly state the law as to correct the misleading instruction.

6. Same—*when instruction in action for negligence is not objectionable.* An instruction is not objectionable which informs the jury they should find for the plaintiff if they believed, from the evidence, that he was entitled to recover under any one of the counts in the declaration, and that they should assess the damages at such sum as they thought, under the evidence, the parties for whose use the suit was brought had actually sustained, if any, not exceeding the amount asked for in the declaration.

*Illinois Central Railroad Co. v. Cozby,* 69 Ill. App. 256, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Alexander county; the Hon. JOSEPH P. ROBARTS, Judge, presiding.

WILLIAM H. GREEN, (JAMES FENTRESS, of counsel,) for appellant.

WILLIAM N. BUTLER, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action brought by Thomas C. Cozby, administrator of the estate of Robert F. Craiglow, deceased, against the Illinois Central Railroad Company, to recover for the death of Craiglow, who was killed while in the discharge of his duties as a switchman in the yards of the railroad company at Cairo, on the 28th day of September, 1894.

The declaration contained three counts, in the first of which it is averred, in substance, that on the 28th day of September, 1894, the railroad company was possessed of and operating a line of railroad from Cairo to Chicago, and was also then and there possessed of, and using and operating along a part of its said line of railroad in said city of Cairo, in said county of Alexander, a certain switch-yard, consisting, among other things, of main tracks and switch-tracks; that the said Robert F. Craiglow was then and there in the employ of the defendant in said switch-yard as one of its switchmen; that it became and was the duty of the defendant, which it owed to the said Robert F. Craiglow as such employee, as aforesaid, to furnish, keep and maintain its said switch-yard in a safe and proper condition, so as not to expose the said Robert F. Craiglow to any unnecessary danger or liability to accident, and it was then and there the duty of the defendant to fill and keep filled the spaces between the ties of said railroad tracks in the said switch-yard

with cinders or some other suitable substance, so that in walking in, upon or along the said railroad tracks in said switch-yard the said Robert F. Craiglow, as such employee, as aforesaid, would not be exposed to unnecessary danger to life or limb in the performance of his duties as such employee, as aforesaid, and the said defendant, not regarding its said duty in that behalf, then and there failed and refused to fill in the spaces between said ties in said switch-yard, as aforesaid, and thereby permitted its said switch-yard to be and remain in unsafe repair and condition, and then and there permitted some of the ties of its said railroad track in its said switch-yard to be and remain above the surface of the ground and the space between the ties thereof to remain not filled by cinders or other suitable material, as aforesaid, and thereby, by means and reason thereof, the said Robert F. Craiglow, while uncoupling cars in said yard, and in pursuance of said employment by the defendant, was then and there exposed to unnecessary danger and liability to accident, and then and there, while engaged in uncoupling cars on the said track of the defendant in said switch-yard, and while using all due care and diligence on his part, caught his foot in the track and rails of said switch-yard, and then and there unavoidably fell to and upon one of the tracks of defendant in said switch-yard, and one of the cars of the defendant which the said Robert F. Craiglow was then and there engaged in uncoupling, then and there passed over the body of him, the said Robert F. Craiglow, by means whereof he was then and there killed. In the second count, after stating the duty of the appellant, the breach is averred in these words: "Then and there failed and refused to furnish, keep and maintain its said road-bed and switch-tracks in such reasonably safe and proper condition, as aforesaid." And in the third count, after stating the duty of appellant, the breach is in the following words: "Then and there failed and refused to so arrange and keep in

such proper condition and repair the said switch connections, switch frogs and road-bed upon the main line and switch lines in such switch-yard."

To the declaration the defendant pleaded the general issue, and a trial before a jury resulted in a judgment in favor of the plaintiff for $5000, which, on appeal, was affirmed in the Appellate Court, and for the purpose of reversing the latter judgment the railroad company has appealed to this court.

At the close of the evidence counsel for the defendant requested the court to instruct the jury to find for the defendant. This instruction was refused, and its refusal is relied upon as error. The transcript of the record as originally prepared did not contain this instruction, and when this case was before us at a former term we declined to consider the action of the court in refusing the instruction, as it was not in the record. It appears, however, that an amended record has been filed, and also a stipulation, which show the ruling of the court on the instructions, and it is now claimed that the court erred in refusing to direct the jury to find for the defendant, and in support of this position it is first insisted that there is no evidence in the record tending to show that deceased was exercising care and prudence when he was killed, and that his death was the result of his own negligence. If the deceased failed to exercise ordinary care, and in consequence of his own negligence lost his life, plaintiff was not entitled to recover; but whether the deceased was in the exercise of ordinary care was a question of fact, to be determined by the jury from all the evidence, and if there was any evidence fairly tending to show ordinary care on behalf of the deceased the court did not err in refusing the instruction.

The deceased, at the time of his death, had been in the employ of the railroad company, as switchman in the Cairo yards, for about two months. His duties required him to switch, couple and uncouple cars and make up

trains.  On the morning of September 28, about fifteen
minutes past eight o'clock, the deceased, with a crew of
three others, was at work in what was called the "boat-
yard."  The engine was faced north and had several box
cars attached to its rear end.   The foreman of the gang
desired to have the train backed south and the rear four
cars cut off and switched back to a track near the Ohio
river.  The deceased, under the direction of the person in
charge of the crew, had gone up the track north of the
place where he was killed, and had coupled the engine
onto the seven freight cars.   After this was done he
walked down the track at the side of the train, which
was backing south at about two or three miles an hour.
Abernathy, the person in charge of the crew, directed
him to uncouple the rear four cars.  This was some thirty
to fifty feet north of "switch points," so called, where he
was killed.   The deceased attempted to make the un-
coupling as directed, but owing to the fact that he could
not pull out the car pin, or for some other cause, he did
not succeed.   He followed along, however, as the train
moved on, trying to remove the pin, until his foot caught,
and being unable to unloose it he was run over and killed.

It may be true that no witness saw the deceased at
the moment he was run over and killed, but a number of
witnesses who were well acquainted with the deceased
unite in testifying that he was a sober, temperate man,
was very careful, was possessed of all his faculties, eyes,
hearing, limbs, sight and body, and that he was young
and active.  Indeed, it is admitted by counsel in their ar-
gument that "Robert F. Craiglow, the deceased, was an
intelligent young man in his twenty-second year, mar-
ried, with two infant children.   For one of his age he
had very large experience in railroading."   Moreover, it
appears from the evidence that the deceased was in the
discharge of his duties in obedience to the orders of his
superior.   He was discharging these duties in the ordi-
nary and customary mode.  Adams, the engineer, testified

174—8

that it was the custom in the yards of appellant to couple and uncouple cars and make switches when the cars were in motion, moving at three miles an hour. In addition to the foregoing, several witnesses who saw the body of the deceased immediately after the accident testified before the jury in regard to the condition of the ties and tracks, and also the condition and situation of the body before it was removed from the tracks. In a case of this character it is true that the burden is upon the administrator to prove that the deceased exercised ordinary care to avoid the injury, but the exercise of ordinary care may be established by circumstantial as well as direct evidence. (*Chicago, Burlington and Quincy Railroad Co.* v. *Gregory,* 58 Ill. 272; *Illinois Central Railroad Co.* v. *Nowicki,* 148 id. 29.) We are not called upon here to determine whether the evidence introduced was sufficient to establish ordinary care on the part of the deceased. That was a question for the Appellate Court, but it does not arise here. The question presented on the refusal of the court to give the instruction requested by the defendant is whether the facts and circumstances put in evidence on the trial, when all considered, tended to prove ordinary care on the part of the deceased. We think they did, and we are satisfied that the circuit court ruled properly in refusing to take the case from the jury.

It will be observed that in the first count of the declaration the negligence charged against the railroad company is, that it failed and refused to fill in the spaces between the ties in the switch-yard, and permitted its said switch-yard to be and remain in unsafe repair and condition, and then and there permitted some of the ties of the railroad track in said switch-yard to be and remain above the surface of the ground and the spaces between the ties to remain not filled by cinders or other material. It is contended in the argument that there is no evidence tending to show that the accident to the deceased was the proximate result of the unfilled condition of the track.

In reference to the condition of the track where the deceased lost his life Clarence Kennison testified: "I saw at the time his foot was in between two rails. * * * I noticed the condition of the road-bed at the point where he was killed. I noticed the condition with reference to there being any filling at that place between the ties. It was not filled. Just a short piece north of that it was filled. * * * No, sir; a short distance south of that it was not filled. Eight or ten feet south from where he was killed it was filled. It commenced to be filled eight or ten feet north of where he was killed. That was where the filling began north. The filling commenced somewhere about two inches and gradually went down. There where he was killed there was no filling—was between six and seven inches. There was a failure to fill six or seven inches. * * * This failure to fill was in between the two rails and in between the ties. The ties outside of the rail next to the railroad were not all filled on the Ohio river side. * * * It was between eight and nine o'clock in the morning." The testimony of this witness was confirmed by a number of others. James Meehan, who had been assistant yard-master, testified: "His right foot was on the inside of the rail—between the two rails —with the toe kind of down. * * * I noticed the spaces between the ties at the place where I saw his body. They were not filled. * * * This condition of things extended, to the best of my judgment, eight or ten feet,— maybe twelve. After you got a distance of eight or ten or twelve feet it was filled above there. * * * I had been assistant yard-master. Defendant's switchmen were required to work over the whole territory whenever they were needed. * * * Am familiar with that part of the yard. * * * The spaces between the ties in this switch-yard are changed from day to day. Section men are working all the time on the yard at different places. A man could not become acquainted with the different places where the spaces were filled and not filled. It would

make no difference how long he worked there, there would be places he would know nothing about. There were changes going on all the time." Evidence was also introduced tending to prove that it was bad railroading to leave the spaces unfilled, as was done where the deceased was killed and for a space of ten or twelve feet north. In addition to the evidence showing the condition of the track where the accident occurred, at the request of counsel for defendant the jury, in charge of a sworn officer, went in a body to the place where the deceased was killed and made an examination for themselves.

It is a duty imposed by law upon a railroad company to use reasonable and ordinary care and diligence in providing suitable and safe machinery, tracks and switches for the use of persons engaged in its service. Whether the railroad company discharged that duty, or whether the deceased lost his life through the failure of the railroad company to do so, were questions of fact to be determined by the jury, and if the evidence fairly tended to establish negligence on behalf of the railroad company, (as we are inclined to think it did,) the finding cannot be reviewed here. The theory of plaintiff on the trial was that the spaces between the ties for eight or ten feet north of the "heels" of the "switch points," where there were no "bridles" and where there was no excuse for leaving them open, were negligently left unfilled; that deceased, while in the discharge of his duty in attempting to uncouple the train, came to his death by stepping into one of these unfilled spaces, in consequence of which his foot was caught under the rails, and being unable to remove his foot he was run over and killed. If this theory was the correct one, (and there was evidence to support it,) then the negligence of the railroad company was established.

Many questions of fact have been alluded to and discussed in the argument, but as those matters do not properly arise on this appeal we shall not refer to them.

On the trial the appellant read in evidence a certain paper writing marked "Exhibit B," signed by an officer of the railroad company and the deceased, in which it is claimed the railroad company was released from liability on account of the accident complained of, and much reliance is placed in the argument upon this contract to defeat a recovery. That part of the agreement signed by the general superintendent of the railroad company was dated April 1, 1892, and among other things it contained the following: "All such persons are further required to take notice that they are hired and retained in the employ of the company on the understanding that if they work for the company they must assume all risks run by them in working with the engines, tenders, cars, machinery and appliances and tracks hereinbefore particularly mentioned, and in addition assume all other risks usually incident to the position in which they may be placed in the company's service." The paper following that signed by the superintendent of the railroad company, executed by the deceased, among other things contained the following: "I, the undersigned, being employed as switchman by the Illinois Central Railroad Company, hereby agree to assume all risks of the service of said company, * * * and that I will save said company harmless from all liability for injury that may come to me because of any such risks, whether the same arise, in whole or in part, from acts or omissions of my co-employees in the same branch of the service, or employees who are in a different branch of the service, or from those not employed."

The court, over the objection of the plaintiff, admitted the contract in evidence, and upon the request of the defendant instructed the jury as follows:

"If you believe, from the evidence, that the deceased, at the time of his entering into the service of the defendant railroad company, executed the contract in evidence before you, then, by reason of such contract, the plain-

tiff cannot recover in this case unless the evidence in the case shows that the defendant railroad company has been guilty of such negligence as is in law called gross negligence."

Whether the court decided correctly in admitting the alleged agreement in evidence and in giving the instruction to the jury is a question not presented by the record and we express no opinion upon it; but the court having ruled in favor of the appellant in admitting the contract in evidence, and having instructed the jury upon the law as requested by appellant, appellant is in no position to complain. In other words, it has no error to complain of. The court, at the instance of appellant, held that plaintiff could not recover if deceased had executed the contract, unless the evidence showed that defendant had been guilty of gross negligence. Here was a question of fact, which appellant, by its evidence and the instruction of the court, submitted to a jury and the jury found against it, and the Appellate Court having affirmed the finding of the circuit court its judgment is conclusive.

The court gave three instructions for the plaintiff and twenty-one for the defendant, and it is claimed in the argument that the first and second instructions given for the plaintiff are erroneous. The first instruction directed the jury that if they believed, from a preponderance of the evidence, that the deceased was in the employ of the defendant as a switchman, as alleged in the declaration, and while in the discharge of his duty as such and in the exercise of due care "was killed in manner and form as charged in the declaration herein, then you should find for the plaintiff, and assess the damages at such sum as you may believe, from the evidence, the parties for whose use and benefit this suit was brought have actually sustained, if any, not exceeding the amount sued for in the declaration." The objection urged to this instruction is, that it ignores entirely the question of negligence on the part of the defendant. It is insisted, on the contrary,

that the language "in manner and form as charged in the declaration herein," sufficiently informed the jury that proof of the negligence charged in the declaration was necessary to a recovery. We think the instruction is subject to just criticism in that the language "in manner and form as charged in the declaration" might reasonably have been understood by the jury as simply referring to the manner of inflicting the injury and causing the death, —that is, by being caught between the rails and run over by the cars. But in view of the rule laid down in the defendant's instructions in plain and express language, the jury could not have been misled by the error complained of. Several of the instructions given at the instance of the defendant told the jury that the plaintiff could only recover upon proof, by a preponderance of the evidence, that the defendant was guilty of the negligence charged, and that such negligence was the proximate cause of the alleged injury. Under these instructions it is, we think, highly improbable that the jury could have thought, from the language used in plaintiff's first instruction, that full proof of defendant's negligence was not essential to the right of recovery. It is true, as contended by counsel, that where instructions are contradictory in their enunciation of rules of law one can never be held to cure an error in the other, because it cannot, in such case, be told which of the two the jury adopted as their proper guide. But these instructions do not fall within that category. Here the most that can be said is that plaintiff's first instruction was misleading, but whatever tendency it might have had in that direction was fully corrected in those given on behalf of the defendant.

The second of plaintiff's instructions we do not regard as objectionable. It simply told the jury that if they believed, from a preponderance of the evidence, that plaintiff was entitled to recover under any one of the counts in the declaration, their verdict should be for the

plaintiff, and that they should assess the damages at such sum as they thought, under the evidence, the parties for whose use the suit was brought had actually sustained, if any, not exceeding the amount asked for in the declaration. It is an instruction relating to the measure of damages, and not objectionable as such.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*