### Chicago North Shore Ry. Co. v. Nellie M. Green, Adm'x, etc.

1. EVIDENCE—*In Actions for Damages Sustained by Death Caused by Negligent Act.*—In an action brought by an administrator to recover damages sustained through the death of his intestate, it is incumbent upon him to establish by evidence, the allegation of his declaration that the deceased, when injured through the negligence of the defendant, was himself in the exercise of due care and diligence, without which a recovery can not be sustained.

Trespass on the Case.—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1900. Reversed. Opinion filed January 24, 1901.

Statement.—This suit was brought by appellee to recover damages sustained through the death of Luther S. Green, appellee's intestate, whose death, it is alleged, was caused by the negligence of appellant. The declaration charges that at the time of the injury to Luther S. Green by which his death was caused, the said Green was in the exercise of due care and diligence. There is no substantial conflict in the evidence. The established facts are as follows: That the deceased was a man of ordinarily good health, about thirty-six years of age, and a fairly expert bicycle rider; that upon the day of his death he had been visiting, together with his wife, at the home of his mother at Ellis Park, and that at about seven o'clock in the even-

ing he left that place to ride upon his bicycle to his own home at Wilmette, some seventeen miles distant. He started alone, his wife returning home by cars. The evidence only shows the location and actions of the deceased at intervals between seven o'clock and somewhat after eleven o'clock, the time of his death. At nine o'clock he is shown to have entered a saloon upon North Clark street, Chicago, about five and one-half miles from his starting point. At this time the evidence discloses that he had mud upon his clothing, as if he had fallen from his wheel, his bicycle lamp had become broken or loosened from the wheel, the bracket which held the lamp was gone, and he was apparently under the influence of liquor. Barges, who was in this saloon, testified that he advised Green to remain over night at a hotel in the neighborhood, and that when Green persisted in going on, the witness helped to tie his lamp upon the bicycle and watched him as he proceeded in a "zigzag" course, going from one side of the street to the other. Green was seen later at about eleven o'clock at the corner of Evanston avenue and Graceland avenue, some two and one-half miles north of the saloon where he had stopped. Coulter testified that he met him there and talked with him. Green was then leading his wheel and there was then no light upon the wheel. Green inquired as to the direction and distance to Wilmette. Witness advised him not to try to go on to Wilmette by wheel, but to leave his bicycle at a place near by and to go home by car. This witness testified that Green appeared to have fallen; that his clothing was muddy; that he had a deep cut over his eye; that he made several unsuccessful attempts to mount his wheel, and finally, when witness took his car, Green had started north and was stuck in a mud hole. Whether he was seen again by any of the witnesses before the injury is uncertain. Two employes of appellant testify to having seen a man with a bicycle on Evanston avenue, but the man they saw was not identified as the deceased. One of the electric cars of appellant ran upon the deceased, who was upon the track, just rising from a reclining position, and killed him. The car, after

striking deceased, ran far enough to leave his wheel, which was apparently pushed from the track by the car, a few feet behind the car. When the car was stopped the deceased lay under or behind the front wheels of the car. The motorman who was guiding the car testified that he first saw an object upon the track, which he thought was a piece of brush, some seventy feet in front of the car, and that this was the limit of vision; that he then made every effort to stop the car; that when about ten or fifteen feet from the object he saw that it was a bicycle, and when he struck the bicycle the deceased, rising up, came into view, and was run over. Other witnesses who were upon the front platform first saw deceased when about ten to fifteen feet distant. The evidence varies somewhat as to the speed of the car, from eight miles to fifteen miles per hour. The bicycle lamp was found to be cold immediately after the accident. There was no evidence tending to contradict the testimony of the motorman as to the distance of the deceased and his bicycle upon the track when he first saw them. There was no evidence to establish the distance within which a car going at eight or fifteen miles per hour could be stopped. There was no evidence to show that, from the nature of the locality and the number of people using the street, the rate of fifteen miles per hour would be reckless rate of speed for a street car at the place in question.

The only evidence tending to show that Green was intoxicated at the time of the injury is the evidence of Barges, who, after narrating the occurrences in the saloon stated : " He did not come up to the bar without tacking around from one side to the other. His walking was not, as I should judge, as a sober man should walk. He sort of staggered up." And the testimony of Coulter, who stated that " the man seemed dazed and bewildered." There was evidence that he ordered one glass of beer in the saloon, but no evidence that he drank it.

The negligence counted upon in the different counts of the *narr.* consists of failure of proper apparatus for bringing car to a stop; rate of speed; and the general charge of

careless and improper management of the car.    Upon cross-examination the motorman testified that there was no sand upon the car, for use in stopping.    There was no evidence as to the use or effect of sand in stopping cars or to indicate within what distance a car might be stopped  by the use of sand.

The jury returned a verdict for appellee and assessed the damages at $5,000.    From judgment upon the verdict this appeal is prosecuted.

GRAHAM H. HARRIS, attorney for appellants;  W. W. GURLEY and JOHN A. ROSE, of counsel.

STEERE & FURBER, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

Two questions are presented upon this appeal: first, as to the sufficiency of the evidence to show negligence of appellant, and secondly, as to the effect of the evidence establishing care, or lack of it, upon the part of the deceased.

There is scant evidence tending to show a lack of ordinary care upon the part of appellant.    There is no evidence showing or tending to show any recklessness, or wanton or willful carelessness amounting to gross negligence.    The most that can be said of the evidence presented to sustain the action is that some of it tends to show that the car was running at a rate of about fifteen miles per hour, and that there was no sand for the motorman to use in stopping the car.    There is no evidence to establish that the running of a car upon Evanston avenue in the extreme northern portion of the city at the rate of fifteen miles per hour was a dangerous management of it by reason of the population and use of streets in that vicinity.    Nor is there evidence from which it can be determined what the effect of the use of sand might be in the stopping of a car going at the rate of fifteen miles per hour.    If the jury would have been warranted in finding from this state of the evidence that appellant was guilty of any negligence, it could only be to the extent of a lack of ordinary care.    The ordinance

offered in evidence regulating speed of steam engines has no relevancy to the facts of this case. The only negligence which could in any event be imputed to appellant upon the evidence in this case being a lack of ordinary care, it becomes important to inquire as to the exercise of care upon the part of the deceased.

It was incumbent upon the appellee to establish, by evidence, the allegation of her declaration that the deceased, when injured through negligence of appellant, was himself in the exercise of due care and diligence. C. R. I. & P. Ry. Co. v. Clark, 108 Ill. 113; I. C. R. R. Co. v. Nowicki, 148 Ill. 29; C. & E. I. R. R. Co. v. Chancellor, 165 Ill. 438; I. C. R. R. Co. v. Cozby, 174 Ill. 109.

In some cases recovery is permitted for negligence causing death, without positive evidence of eye-witnesses as to the conduct of the deceased, and in such cases circumstantial evidence is admissible, such as the experience of the deceased and character as to sobriety and caution. C. R. I. & P. Ry. Co. v. Clark, *supra;* I. C. R. R. Co. v. Nowicki, *supra;* I. C. R. R. Co. v. Cozby, *supra.*

But this is not by way of relaxation of the rule requiring a showing of the exercise of care by the one injured; it is merely the supplying of a lack of direct proof by the best evidence obtainable.

Here there is no resort to such evidence, for here there were eye-witnesses to the conduct of the deceased preceding and at the time of the injury. Nor has appellee sought to establish the character and habits of the deceased in the matter of sobriety and care for his own safety. The only evidence presented goes to establish that the deceased was not in the exercise of due care for his safety, but that lack of such care brought him to his death. Whether the evidence be viewed as sufficient to establish that the deceased was intoxicated when he was lying where he had fallen upon the track of appellant or not, it at least establishes that he was not in a condition to proceed with safety upon a bicycle along a street occupied in part by a street railway. To venture upon such an undertaking in his dazed .

and unsteady condition, whatever its cause, was not the undertaking of a reasonably prudent man. Men, presumably of reasonable prudence, tried to dissuade him from it, and the disregard of their warning led him into the peril which resulted in his death. It was essential to a recovery that appellee establish in some manner the exercise of care by the deceased, *i. e.*, that the injury in no way resulted from his negligence. This she has wholly failed to do, and on the contrary it is so clearly established that the lack of care upon the part of the deceased caused the injury, that we think reasonable minds could not differ in the conclusion. To sanction the capricious finding of a jury against all the evidence and with no support therefrom, to the effect that the deceased was in the exercise of such care for his own safety as men of ordinary prudence use, would be to disregard the duty which the court owes to litigants to see that liability is not imposed through an absolutely unwarranted finding of facts.

But it is strenuously urged by counsel for appellee that the contributory negligence of the deceased may be conceded and yet the recovery be sustained. Among other cases cited in this behalf is L. S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 596. In the Bodemer case the liability of the defendant was based upon facts which warranted a jury in finding that the railroad company was guilty of wanton and willful negligence, gross in degree. It appeared in that case that the train which caused the injury was running at the rate of thirty-five or forty miles per hour, contrary to ordinance, in a crowded city, over street crossings and without warning by the ringing of a bell. The court said : " We are unable to say that there was not evidence enough to justify the court in leaving it to the jury to say whether or not the boy was killed by the wanton and willful negligence of the company." From expressions in this and other cases, it seems clear that the element of contributory negligence as a bar to a recovery is disregarded only in those cases where the negligence causing the injury is in the conduct of the wrongdoer after a discovery of the peril

of the one injured, or in cases where the negligence which caused the injury is declared to be recklessness, that is, wanton or willful negligence.

While it is stated by some text writers and in some decisions in general terms that although the plaintiff is guilty of negligence contributing to the injury, yet he may recover for the negligence of the defendant, if the defendant could have avoided committing the injury by the exercise of ordinary care, such language must be understood as declaring that the defendant will be so liable only when by the exercise of ordinary care after a discovery of the peril of the plaintiff, the injury could have been prevented, or where the injury results from some other reckless or wanton act, amounting to gross negligence. Bodemer case, *supra.* Any other interpretation would result in sweeping the doctrine of contributory negligence out of the law relating to recovery for negligence. The West Chicago St. R. R. Co. v. Liderman, 187 Ill. 463.

Laying aside all refinement of language, it is apparent that a lack of ordinary care to avoid an injury after discovery of the peril of the one injured, is in effect such recklessness and willful disregard of the rights of others as may be declared to constitute gross negligence, and therefore the two instances nóted by the writers as exceptions to the rule that contributory negligence bars recovery, are logically of one and the same class, viz., gross negligence of the wrongdoer.

There being in this case no evidence from which a jury could draw the conclusion of gross negligence on the part of appellant, or that appellant might, by exercise of ordinary care after discovery of Green's peril, have avoided the injury, and it being clear that the deceased was not in the exercise of due care for his own safety, and that the lack of such care contributed to his injury and death, we hold that a recovery can not be had.

The judgment is reversed.