## St. Louis Southwestern Railway Company of Texas v. Will G. Ford.

### Decided June 24, 1909.

**1.—Master and Servant—Negligence—Switchman—Unsurfaced Track.**

In case of a railway switchman who, having his foot caught between ties, was run down and injured by an approaching engine when about to get upon the switch board to arrange the coupler, evidence considered and held to support a finding of negligence on the part of the railway company in permitting a part of its track, necessarily used by its servants in such duties, to remain unsurfaced between the rails, with irregular intervals between ties, and so overgrown with grass as to conceal the dangerous depressions incident to such accident.

**2.—Same—Contributory Negligence—Proximate Cause.**

The act of a switchman in attempting to get on an approaching engine from a position between the rails could not be held contributory negligence as matter of law where the proximate cause of the injury was not such act, but the negligence of the employer with respect to the condition of the track, whereby his foot became caught between the ties.

**3.—Same—Assumed Risk.**

It was not error, after having charged that the risk was one assumed by the servant if the dangerous condition of the track causing his injuries was known to him or would have been learned by the exercise of ordinary care, to instruct the jury also that plaintiff was not bound to inspect the track at the place in question to ascertain if it was reasonably safe to be used by him in the performance of his duties; or to charge that he assumed only such risks as he knew or would have learned by the exercise of ordinary care.

**4.—Charge—Assuming Fact.**

Instruction considered and held not erroneous as assuming controverted facts in the case.

**5.—Same.**

The negligence relied on consisting of evidence that the track was unsurfaced, leaving depressions between the ties concealed by grass, whereby plaintiff's foot was caught and held till an engine ran over him, no error appeared in a charge submitting this issue as a question whether there were "spaces and holes between the ties;" nor in submitting the permitting of such growth of grass, conjunctively with the other defects in the track, as one of the proximate causes of the injury.

**6.—Requested Instructions.**

Various requested instructions held properly refused because the matters were sufficiently presented by the instructions given.

**7.—Damages—Personal Injury.**

A recovery of $20,000, as damages for injuries to a switchman, 31 years old and earning $100 per month, sustained as not excessive; the injuries consisting in the crushing of both legs, rendering them permanently incapable of use.

Appeal from the District Court of Smith County. Tried below before Hon. R. W. Simpson.

*E. B. Perkins, Daniel Upthegrove* and *Marsh & McIlwaine*, for appellant.—It was error for the court, on the facts appearing, to charge the jury that appellee was not bound to inspect the track at the place in question to ascertain if it was reasonably safe to be used by him in the performance of his duties as brakeman, etc., in that said charge was on the weight of the evidence and an invasion of the province of the jury. Kansas City So. Ry. Co. v. Williams, 111 S. W., 196; St. Louis S. W. Ry. Co. v. Hynson, 101 Texas, 543.

It was error for the court to assume that the evidence sustained appellee's contention, as he did in that portion of the charge which is as follows: "Upon the issue of contributory negligence, you are instructed that if you shall find that an ordinarily cautious and prudent person would not have attempted to stand between the rails and mount the pilot of the locomotive in the manner and under the circumstances in which plaintiff did." Galveston C. St. Ry. Co. v. Ely, 91 S. W., 887; Texas Cent. Ry. Co. v. Waldie, 101 S. W., 517.

Where one portion of the court's charge is erroneous the error can not be cured by other portions of the charge, and in such a case the judgment should be reversed and the cause remanded, unless the court expressly withdraws the erroneous instruction from the jury before the verdict is reached. San Antonio & A. P. Ry. Co. v. Robinson, 73 Texas, 277; Missouri, K. & T. Ry. Co. v. Rodgers, 89 Texas, 675; Texas Cent. Ry. Co. v. Waldie, 101 S. W., 517.

Appellee's petition did not allege that there were holes in appellant's track. The negligence relied upon in this respect was that appellant had failed to keep its track surfaced at the place where the accident occurred. Railway v. Scott, 27 S. W., 827; Galveston, H. & S. A. Ry. Co. v. Sweeney, 6 Texas Civ. App., 173; Houston & T. C. Ry. Co. v. Lackey, 12 Texas Civ. App., 229; Fleming v. Pringle, 21 Texas Civ. App., 227.

It was error for the court to submit to the jury the issue as to the negligence *vel non* of appellant in permitting the grass to grow on the

track.  Feille v. Traction Company, 107 S. W., 367; Texas & P. Ry. Co. v. Ball, 96 Texas, 622.

It was error for the court to refuse. to give the special charges, because the appellant had the right to have the facts grouped as they were in the special charge, and which, if true, were a complete defense to appellee's cause of action, submitted affirmatively to the jury.  Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635; Missouri, K. & T. Ry. Co. v. Rogers, 91 Texas, 58; St. Louis S. W. Ry. Co. v. Cassidy, 92 Texas, 525; Galveston, H. & S. A. Ry. Co. v. Washington, 94 Texas, 510.; Gulf, C. & S. F. Ry. Co. v. Mangham, 95 Texas, 413; Missouri, K. & T. Ry. Co. v. Purdy, 98 Texas, 557.

*Johnson & Edwards,* for appellee.—It was appellant's duty to exercise ordinary care to maintain its main track at a station and near a switch in reasonably safe condition for brakemen in the operation of its local freight trains to stand and move upon and across the same in front of and about moving engines and cars in the night and in the day; and the evidence made an issue whether appellant discharged this duty, and fully authorized the verdict.  San Antonio & A. P. Ry. Co. v. Brooking, 51 S. W., 537; Gulf, C. & S. F. Ry. Co. v. Redeker, 67 Texas, 181; Missouri Pac. Ry. Co. v. Jones, 75 Texas, 152; Galveston, H. & S. A. Ry. Co. v. Slinkard, 17 Texas Civ. App., 585; St. Louis, I. M. & S. Ry. Co. v. Robbins, 21 S. W., 887; Erie Ry. Co. v. Moore, 113 Fed., 269; Northern Pac. Ry. Co. v. Teeter, 63 Fed., 527; Preston v. Central R. & B. Co., 84 Ga., 590; Illinois C. Ry. Co. v. Cozby, 174 Ill., 109; Baltimore & O. S. W. Ry. Co. v. Clifford, 99 Ill. App., 381.

Appellant was bound to know that trainmen were entitled and were likely to stand and move in the discharge of their duties, in the night and in the day, upon and across its main track at the place in question, a station and near a switch, relying upon the master's care to maintain it in reasonably safe condition for their use.  St. Louis S. W. Ry. Co. v. Pope, 98 Texas, 535, 541; El Paso & N. W. Ry. Co. v. McComas, 81 S. W., 761, 762; Galveston, H. & S. A. Ry. Co. v. Jackson, 93 Texas, 262; Galveston, H. & S. A. Ry. Co. v. Lynch, 22 Texas Civ. App., 336; International & G. N. Ry. Co. v. Sypole, 29 S. W., 686; Eads v. Marshall, 29 S. W., 171.

Plaintiff being in front of and near the approaching engine when his foot became fastened rendered it impossible for him to avoid the probable result of appellant's negligence, but this was not a proximate contributing cause of the injury, since he would not have been. injured but for the unforeseen fastening of his foot in the track by appellant's negligence.  St. Louis S. W. Ry. Co. v. Cleland, 110 S. W., 122, 127; International & G. N. Ry. Co. v. Ormond, 64 Texas, 489; Central T. & N. W. Ry. Co. v. Hoard, 49 S. W., 143; International & G. N. Ry. Co. v. Culpepper, 19 Texas Civ. App., 182; Jones v. George, 61 Texas, 346; Texas & P. Ry. Co. v. Bigham, 90 Texas, 225-228; Hilje v. Hettich, 95 Texas, 321, 326-27; Railway Co. v. Callaghan, 56 Fed., 993.

The charge elaborately and correctly submitted the issue of appellee's negligence in mounting the pilot step as and when he did, and the evi-

dence abundantly authorized the jury's finding. Gulf, C. & S. F. Ry. Co. v. Redeker, 67 Texas, 181, 187; Lee v. International & G. N. Ry. Co., 89 Texas, 583; St. Louis & S. F. Ry. Co. v. Ames, 94 S. W., 1112; Texas Mex. Ry. Co. v. Higgins, 44 Texas Civ. App., 523; Texas & P. Ry. Co. v. Gentry, 163 U. S., 353; Erie Ry. Co. v. Moore, 113 Fed., 269.

Since, in the absence of knowledge to the contrary, the servant may rely upon the assumption that the master has done his duty, he is under no obligation to look out for the master's negligence. The charge so stated the rule, and it is unobjectionable. St. Louis S. W. Ry. Co. v. Hynson, 109 S. W. Rep., 930, 101 Texas, 543; Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 76; Drake v. San Antonio & A. P. Ry. Co., 99 Texas, 240, 246; Galveston, H. & S. A. Ry. Co. v. Brown, 33 Texas Civ. App., 589, and numerous cases there cited.

The charge should not be construed as assuming a controverted fact, for it is clear that no such assumption was in fact intended, and that the language is not such that jurors of ordinary intelligence were apt so to construe it. Railway Co. v. Casseday, 92 Texas, 526-27; Railway Co. v. Lehmberg, 75 Texas, 61, 66; Railway Co. v. Bailey, 91 S. W., 821, 823; Railway Co. v. Oram, 92 S. W., 1030-31; Railway Co. v. Box, 93 S. W., 138; Railway Co. v. Fink, 44 Texas Civ. App., 544; Railway Co. v. Lewis, 99 S. W., 579; Railway Co. v. Furber, 45 Texas Civ. App., 348; Railway Co. v. Kelly, 34 Texas Civ. App., 21; Railway Co. v. Copley, 38 Texas Civ. App., 568; Railway Co. v. Hines, 40 S. W., 153-54; Railway Co. v. Waldo, 32 S. W., 784-85. On amount of recovery: Railway Co. v. Pope, 43 Texas Civ. App., 616; Railway Co. v. Cleland, 110 S. W., 123; Railway Co. v. Stevens, 94 S. W., 395; Railway Co. v. Nass, 57 S. W., 910; Railway Co. v. Moynahan, 33 Texas Civ. App., 302; Railway Co. v. Nesbit, 43 Texas Civ. App., 630; Railway Co. v. Cherry, 44 Texas Civ. App., 344; Railway Co. v. Kelly, 34 Texas Civ. App., 21; Railway Co. v. Shelton, 30 Texas Civ. App., 72.

LEVY, ASSOCIATE JUSTICE.—By his petition the appellee claimed that while in the service of appellant as head brakeman of its local freight train, and performing his switching duties at the time, he sustained serious personal injuries occurring to him by being run against and upon by a locomotive then being operated by the appellant company on its track at Jester, Texas, alleged to have been directly caused by his foot becoming wedged and fastened between two of the ties in the main track near the switch stand, through the negligence of appellant in having and permitting the said ties at the said place to be and remain exposed and protruding above the surface of the ground between the rails, and arranged on the ground at that place so irregularly spaced, and not properly surfaced with dirt, as that a man's foot would become wedged and fastened between the same. It was further alleged that appellant negligently caused and permitted quantities of grass to grow and remain in the track at that particular place in such manner as to prevent appellee and other trainmen from discerning the depth between the ties at that place or the spacing between them, which condition of the track at that place greatly imperiled the safety of ap-

pellee and other trainmen while they were engaged in the performance of their duties, and all of which was known to appellant. The appellant answered by general denial, a plea of assumed risk and contributory negligence. The case was tried to a jury and a verdict was returned in favor of the appellee for $20,000, and in accordance with the verdict judgment was entered for appellee.

The evidence in the record substantially shows, and we make the finding of fact, that at the time of his injury appellee was in the service of appellant as head brakeman of its westbound local freight train. At Jester, a stopping station, appellant has and maintains a spur track on the south side of and extending west from its junction with its main track. The main track runs east and west. The switch stand for the spur was south of the track. In twelve feet east of the switch block for the side-track is the west edge of a public road running north and south across the main line track. In the afternoon of the day that the appellee was injured his train arrived at Jester and stopped about a car length east of the public road crossing for the purpose of incorporating in the main train the loaded box car that stood on the spur about ninety feet west from the switch stand. It was the duty of appellee to operate the switch and couplers so that the engine could head in on the spur and couple to the car and bring it to the main line, when it was to be placed in the train to the rear of the engine. The appellee got off the engine, where he was riding, and went direct to the car on the spur, and worked and arranged its automatic coupler so that it would operate, unlocked and threw the derailer located on the spur, then went directly to the switch stand and set the switch for the spur track. Upon setting the switch he gave the cut-off signal to the rear brakeman, which meant for the rear brakeman to cut the engine loose from the main train. Appellee then, after giving the signal, at once started east upon the main track to meet the engine as it moved toward the spur and to mount the pilot of the engine for the purpose of opening and adjusting the knuckle of the coupler on the pilot so it would operate, while riding to the car. The engine was old, and the knuckles of its front coupling operated badly; it had to be adjusted by hand in order to couple the car. About the time appellee started toward the engine it, on signal by the rear brakeman, began to move toward him, and it was then appellee's duty, and it was customary in such situation, to meet the pilot upon the track, mount it in front by stepping upon a foot-rest, or step, kept on it for that purpose by appellant, and to ride it to the car, adjust the knuckle and see that the coupling was properly made. When appellee reached a point between the rails about four feet west of the road crossing, or about eight feet east of the switch block, his right foot went down into a space or hole between two ties, and by reason of the toe of his boot resting against one tie while the heel pressed against the other, his foot was clamped and fastened between the ties so that he could not extricate it before the pilot of the engine reached him. The engine was moving towards him at three or four miles per hour, and was at or about the road crossing when his foot became fastened. When his foot became fastened he halloaed for the engine to stop, but it came on. When the pilot reached him he grabbed with both hands

to an iron rod on top of the pilot-beam, and at the same time placed his left foot on the pilot-step or foot-rest in an effort to pull his foot loose and get upon the pilot; but the edge of the pilot struck and crushed his right leg, his left foot slipped from the pilot-step to the track and that leg was crushed by the pilot. Both legs went back under the pilot of the moving engine, and, holding to the iron rod with his hands he was dragged in that position along the track about fifty feet before the engine was stopped. There was some conflict in the evidence as to whether appellee caught his foot in between the ties in the middle of the track or fastened it between the ties on the outside of the south rail. The appellant contended that the latter happened, and the appellee that the former happened. The conflict was settled by the verdict of the jury in favor of appellee; and as the evidence fully warrants the finding, we assume the truth of the jury's finding. The evidence established that the appellant's main track was generally surfaced between the rails at stations and about switches; that the place in the main track where appellee's foot became fastened in the track, about eight feet east of the switch block, the preponderance of the evidence shows was not surfaced between the rails, but that the spaces between the ties were about three inches deep and the ties were irregularly spaced and Bermuda grass thickly growing between them. The grass obscured the spaces and partly covered the ties. There is evidence that "some of the ties near that place were not straight, but seem to have slipped so that the ends were close together" and the intervening spaces were not filled to the top of the ties but left the ties protruding above. Appellee was shown to have been an adult and a brakeman in the service of the appellant for about eighteen months, but had served principally on through trains. He had been on the local run, which included Jester, less than three weeks. It was shown that he had never had occasion to operate the switch or use the spur-track at Jester before the time of the injury, excepting once when his crew "kicked" a car on to that track and left it to be loaded with wood. It was established that until his foot became fastened in the track appellee had never discovered or ascertained that there were unfilled spaces between the ties in the main track at that place. The Bermuda grass growing thickly in these spaces and partly covering the ties made it appear, upon a casual observation, that the spaces were filled. There was evidence, by a witness who walked over the track, that "the grass grew between the ties and concealed them; I could tell where the ties were by seeing the ends sticking out, but I could not tell where they were on the track; I could not tell the spaces between the ties without great difficulty, and the ties could not easily be seen on account of the tall grass." It clearly appears that appellee would not have been injured but for his foot becoming fastened between the unfilled ties in the track. Appellee's injuries were shown to be serious and permanent.

We therefore find and conclude that appellant was guilty of negligence proximately causing appellee's injuries, and that appellee was not guilty of contributory negligence and did not assume the risk of injury and has sustained damages in the amount awarded by the jury.

*After stating the case.*—By its first assignment of error, in complaining of overruling a motion for a new trial, the appellant contends that there was no evidence that the roadbed at the place of injury was in other than a reasonably safe condition for the purposes and uses for which it was intended. The evidence shows the maintenance of a switch by appellant at its stopping station, Jester, within twelve feet of a road crossing. To enter the spur-track for the purpose of setting out a car or incorporating a car in the train the engine doing the switching must, as it can only enter that way, come from the east by the road crossing. While the switch is being set the engine must either block the public crossing or stand to the east of the same. It thus appears, therefore, that it was necessary to use the roadbed from the switch to the crossing in the discharge of switching duties, and that it would be commonly done. In entering the spur-track it is the head brakeman's duty, and it is customary, after setting the switch to mount the pilot of the engine and adjust its coupler so as to properly operate it in coupling to the cars. While appellee was going to the engine to mount the pilot in the discharge of his necessary switching duties he caught and hung his foot, and in consequence was injured by the locomotive doing the switching, in an unfilled space between the ties between the rails. The place of injury was in four feet of the edge of the crossing, or eight feet of the switch block. There is no evidence that it was not necessary or not required in the proper discharge of switching duties to use the roadbed from the switch stand to the crossing, but it does appear that it was within proper limits of the switch for switching and operating duties. It is evident, therefore, that the roadbed of the main track for at least the distance in question must, as a necessary and common incident to operating trains and switching cars on its spur, at divers times necessarily be used by appellant's brakemen for the purposes of their duty at this place. To accomplish their work such brakemen would be required, as it appears, to walk on the roadbed and track about the place of injury in question. It was further shown that the main track for at least fifty feet west from this road crossing, and including the place of injury, was not surfaced up to the top of the ties, but that some of the ties protruded up about three inches above the surface of the earth, leaving an intervening space between the rails. There was evidence to show that some of the ties had slipped so that the ends were close together and the intervening space left unfilled. Rank Bermuda grass covered the spaces between the ties and obscured them. It was shown that as a general rule the appellant surfaced its main track and switches up to the top of the ties in the middle of the track, and it was so done on this part of the main line except for the fifty feet west from the crossing. It was shown that there were no bridle rods, switch points or frogs at the point of injury making it impracticable to fill in between the ties. The testimony in the case quite certainly, we think, raises the issue, and it was properly a question for the decision of the jury as to whether appellant used ordinary care, as was its duty in this case, to keep that part of its roadbed where the necessary work of switching and operating its cars was to be commonly done by its brakemen in a reasonably safe condition for the necessary performance

of their duties. 4 Thompson on Neg., sec. 4332; Gulf, C. & S. F. Ry. Co. v. Redeker, 67 Texas, 181, 2 S. W., 513; St. Louis S. W. Ry. Co. v. Ames, 94 S. W., 1112; St. Louis, I. M. & S. Ry. Co. v. Robins, 21 S. W., 887; Erie R. R. Co. v. Moore, 113 Fed., 269; Illinois C. Ry. Co. v. Cosby, 174 Ill., 109, 50 N. E., 1011.

By the second assignment, in complaining of the refusal of the court to give a peremptory instruction to find for appellant, it is in effect contended that the evidence established as a matter of law that appellee was guilty of contributory negligence. We do not think that it could be so held in this case. It was shown by much evidence that the appellant had negligently permitted spaces between the ties in its main track at a station near its switch, and the same to be obscured by grass growing upon the track, and that appellee did not know of this condition and same was not obvious to him; and further that he was injured by reason of his foot becoming fastened in these obscured spaces and not by reason of his foot slipping off the pilot of the engine. He had his left foot on the pilot of the engine and both hands holding to the rod on the pilot-beam, and would have mounted the pilot safely, it appears, if his foot had not become fastened between the ties in the track. In these circumstances he could not have foreseen that because of appellant's negligence his foot would be caught and fastened in the track. Therefore, if it was negligent for appellee to take position upon the track in front of the engine to mount the pilot, this act, it appears, did not proximately contribute to cause the injury, since he would not have been injured but for the unforeseen fastening of his foot in the track by appellant's negligence. In order to preclude a recovery the negligence of plaintiff, it is generally ruled, must proximately contribute to his injury. 1 Thompson on Neg., secs. 216-219; St. Louis S. W. Ry. Co. v. Cleland, 110 S. W., 122; International & G. N. Ry. Co. v. Ormond, 64 Texas, 489; International & G. N. Ry. Co. v. Culpepper, 19 Texas Civ. App., 182, 46 S. W., 922. The evidence tended to show that it was customary for brakemen, while engaged in switching, to stand and ride on the pilot-step, and that it was impracticable for appellee in this case to adjust the pilot coupling while walking, and that it was necessary for him to ride on the pilot to the car in question to adjust the pilot coupling so that it would operate, and that it was customary in such situations for brakemen to stand on the track and mount the pilot-step from the front while engines were moving, and that this was safer than attempting to mount it from the side. Being on the track, in these circumstances, did not constitute negligence of itself or as a matter of law, and the care of the appellee in doing the act in question was properly for the jury. Lee v. International & G. N. Ry. Co., 89 Texas, 583, 36 S. W., 63.

The third assignment complains of the court's charge on assumed risk. The portion first complained of reads: "In this connection, you are charged, the plaintiff was not bound to inspect the track at the place in question to ascertain if it was reasonably safe to be used by him in the performance of his duties as brakeman." The court had just previously in the same paragraph instructed that, "And although you should find the track at the place in question was not reasonably safe, and that defendant was negligent in permitting its track to be in

such condition, yet plaintiff assumed the risk resulting from such unsafe condition, if any, of the track at the place in question, of which he had actual knowledge, or such as he would have learned by the exercise of that ordinary circumspection which a prudent and competent man would have used in the particular employment in which he was then engaged." The objections to the portion of the charge complained of are that it was a charge on the weight of the evidence and was calculated to confuse and mislead the jury. We do not think the charge subject to the objections urged. The evidence to which the charge was applicable clearly showed that the unfilled spaces between the ties in the track, directly causing the injury, were covered and obscured by tall, thickly growing Bermuda grass. This condition of the track made it appear upon casual observation that the spaces were filled. Appellee did not know, as it was clearly shown, that there were unfilled spaces on the track at the place, and had never had the opportunity to be upon this track before the moment of the injury. As applicable to these facts explaining the duty of appellee, the charge as a whole undertakes to, and does, state the rules of law to be that appellee assumed the risks of which he actually knew and of such hazards of which he would learn by the exercise of that ordinary circumspection which a reasonably prudent person would use in the same circumstances, but that he did not owe the duty of inspection to ascertain if the appellant had discharged the duty it owed him. This we understand to be the correct rule. Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72, 33 S. W., 334; Drake v. San Antonio & A. P. Ry. Co., 99 Texas, 240; Galveston, H. & S. A. Ry. Co. v. Brown, 33 Texas Civ. App., 589, 77 S. W., 832. There could be no confusion to the jury in following the charge as given and applying it to the evidence. There is a difference between making a previous critical examination, which the word "inspection" means, of the track to ascertain whether it was reasonably safe, and using reasonable care and caution, which is the meaning of "ordinary circumspection," to observe what was open and obvious, to discern whether it was unsafe. The jury could reasonably interpret the charge, and apply the same to the evidence, as meaning that if appellee knew that there were unfilled spaces in the track, or that same were open and obvious, and which he ordinarily could see and know were unsafe, he assumed the risk; but if the same were not open and obvious, and could only be discovered through means of a previous critical examination to ascertain such condition, that then and in that event he did not assume the risk. The intervening spaces could not have been discovered, it appears reasonably from the evidence, by "ordinary circumspection," but might have been discovered by making a previous extended critical examination of the track, which it was not appellee's legal duty to do. The jury, in appellee's right, were entitled to be told the extent of his legal duty and the rule of law by which it was to be measured in the facts. We do not think it could reasonably be construed as a charge upon the weight of evidence. The circumstances of the instant case clearly distinguish it from the case of St. Louis S. W. Ry. Co. v. Hynson, 101 Texas, 543, 109 S. W., 930, and Kansas City So. Ry. Co. v. Williams, 111 S. W.,

196. We do not understand, however, that the principles of law announced in those cases are at variance with the principle applied to the facts and charge in this case.

Construing the charge as an entirety, we do not think there was error, or that the jury were misled, in the further portion of the charge complained of, where the jury were told that appellee "only assumed the risk of injury resulting from a condition of the track, whether brought about by the negligence of defendant or not, of which he knew or of which he would have learned by the exercise of that ordinary circumspection which a prudent and competent man would have used in the particular employment in which he was engaged."

By the fourth assignment it is complained that the court in the charge assumed a controverted fact as an established fact when the jury were instructed that appellee would be guilty of contributory negligence "if you shall find that an ordinarily cautious and prudent person would not have attempted to stand between the rails and mount the pilot of the locomotive in the manner and under the circumstances in which plaintiff did." The objection of appellant is that, because the evidence was conflicting as to whether appellee when injured was standing in the middle of the track or astride the south rail, with his right foot on the outside and his left foot on the inside of the rail, the words "to stand between the rails" assumed that the evidence sustained appellee's contention. We do not think the charge could reasonably and fairly be construed as assuming a controverted fact, or that the jury were apt so to construe it. The language "would not have attempted to stand between the rails . . . in the manner . . . in which plaintiff did" freely left the jury to decide whether appellee was standing between the rails with both feet or with only one foot, and upon their finding either of such positions on the track to be negligence, to return a verdict against appellee. By previous portions of the court's charge the appellee's right of recovery was conditioned upon a finding by the jury that he was injured solely by reason of his foot becoming fastened between the ties inside the rail, and directing a verdict against him if the jury found he was injured by reason of his foot becoming fastened between the ties outside the rail.

We do not think the court's charge, as complained of in the fifth assignment, subject to the objection that it assumed negligence or an unsafe track, and the assignment is overruled. If standing alone, the paragraph complained of could be subject to the objection, yet when read in connection with the other paragraphs of the charge, preceding and succeeding, it could not have misled the jury or have been considered by them an intimation from the court as to the weight of any fact. It clearly appears from the other paragraphs of the charge that the fact claimed to be apparently assumed was properly, and untrammeled by any intimation from the court, submitted to the jury for finding in the facts. These paragraphs all conditioned the appellee's right to recover on an affirmative finding in the evidence that the track at the place in question was not surfaced and the space between the ties in the center of the track was not filled in, and that the unsafe condition, if any, of the track was negligence on appellant's part. Texas & N. O. Ry. Co. v. Scott, 30 Texas Civ. App., 496, 71 S. W.,

26; Missouri Pac. Ry. Co. v. Lehmberg, 75 Texas, 61, 12 S. W., 839; Galveston, H. & S. A. Ry. Co. v. Waldo, 32 S. W., 783. The charge should be viewed as a whole and from the standpoint of the jury. Western U. Tel. Co. v. Motley, 87 Texas, 38, 27 S. W., 52. We are inclined to the opinion that even if it should be held that the charge complained of assumed that appellant's track at the place in question was not surfaced, and that it had failed to exercise ordinary care to keep it in reasonably safe condition, the evidence might probably authorize such assumption by the court, as it appears very meagerly to the contrary, if not on the border line of being no evidence at all on the question.

By the sixth assignment it is contended that there is no evidence showing that there were "holes" in appellant's track at the place where appellee was injured, and that it was error for the court to submit the fact as an issue to be determined by the jury. The court charged: "If you shall find that the track of defendant . . . was not surfaced, and that the space between the ties in the center of the track was not filled in, and that on account of such failure there were spaces and holes in between the ties where the feet of plaintiff and other brakemen could and would likely be caught in the discharge of their duties in the usual and ordinary way. . . ." The petition alleged: "And thereupon plaintiff's foot became wedged and fastened in between two of the ties in the main track, the same being exposed and protruding above the surface of the ground and being arranged so as that a man's foot would become fastened and wedged between the same." The evidence of the appellee in the case shows that he hung his foot "in a space not quite as wide as the length of the foot, and that my heel and toe was caught, and when I went to lift up my foot it was caught and held. My foot went down into some space and the heel and toe were caught when I went to pull them out." It is obvious that the pleading and evidence of the appellee undertook to describe the situation on the ground at the place of injury as left by reason of the failure to properly surface the track. That the court, in referring to the failure to properly surface and fill in the space between the ties in the center of the track, described the situation in respect to the unfilled space between the ties as "spaces and holes," did not and could not have misled the jury or worked any injury or authorized a recovery for a different specific defect than alleged. The jury could only have understood, as the charge intended, that the described situation alluded to the particular unfilled space between the ties in the center of the track where appellee was injured and causing his injury. The other proposition under this assignment is overruled. We think the evidence fully authorized the court to submit to the jury conjunctively as one of the proximate causes of the injury, "and that such condition was obscured by grass which was permitted to grow on the track at such place." The rank grass shown to be growing at the place and obscuring the unfilled space between the ties might, and did in this case, operate as a cause to make the unfilled space a negligent omission of duty.

The seventh assignment complains of the refusal to give a requested charge on contributory negligence. The main charge of the court af-

firmatively presented the issue of contributory negligence included in the special charge, and the assignment is overruled.

The court's main charge fully, correctly and affirmatively submitted the issue presented in the special charge complained of in the eighth assignment, and it is overruled.

There was no error in refusing the special charge complained of in the ninth assignment. The substance of the same was fully and correctly stated in the instructions given by the court, and fully authorized a finding in favor of appellee at the hands of the jury if they found no negligence in the particular stated in the requested charge.

The tenth assignment claims that the amount of the verdict is excessive. In the light of the record, and under the decisions of this State, we do not feel warranted in disturbing the judgment and finding of the jury as to the amount awarded, which was their province, and which appears to have been calmly and without passion arrived at. Appellee was a young man 31 years old, the head of a family, and earning $100 per month, and has suffered the loss of the use, it appears, of both legs for life. It appears that his pain and anguish from the injuries was excruciating, and that he will continue to suffer pain and anguish. Both his legs, it appears, sustained a compound comminuted fracture of both bones of both legs, and it reasonably appears, and the jury would be warranted in finding, that neither nature nor an operation will relieve the injuries from being permanent. One of the physicians, testifying that the injuries were permanent, and that no radical operation could restore to appellee the use of his legs, says: "He can never walk at all on the legs he has; . . . I think he would be better off with a cork leg on both."

The judgment was ordered affirmed.

*Affirmed.*

Writ of error refused.