RICKERD v. CHICAGO, ST. P., M. & O. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   September 27, 1905.)

No. 2,232.

**1. MASTER AND SERVANT—KILLING OF RAILROAD FIREMAN—ASSUMED RISK.**

It cannot be said as matter of law that a railroad fireman, who was killed by the derailment of the train on his usual run, assumed the risk of such derailment as one of the dangers of his employment, where there was evidence tending to show that the engine, which was being operated backward, was run at an unusual and dangerous speed on a very rough track and on a downgrade terminating in a curve at the point where the derailment occurred.

[Ed. Note.—Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

**2. SAME—NEGLIGENCE OF RAILROAD COMPANY—EVIDENCE OF CUSTOM OF OTHER COMPANIES.**

Upon issues as to whether a defendant railroad company was chargeable with negligence in the killing of an employé because of the manner of ballasting its track, or because of the running of an engine with a train backwards at a high rate of speed, while evidence that it was customary for other railroads to use the same methods of ballasting and to run engines backward at higher rates of speed is competent, it is not conclusive, where there is other testimony that such practices are dangerous to trains, and does not warrant an instruction that there was no negligence as matter of law; it being the province of the court and jury to determine the question of negligence under all the evidence, and not of other railroad companies.

**3. SAME—ACTION FOR DEATH OF SERVANT—QUESTIONS FOR JURY.**

In an action to recover for the death of a railroad fireman, who was killed by the derailing of the train on his usual run, it was shown that the train, consisting of eight freight cars, a passenger coach, engine, and tender, was run on a downgrade on a rough track, the engine operated backward, at a speed of from 35 to 40 miles an hour, to a point where the track curved and commenced to ascend a steep upgrade where the derailment occurred; also, that a flange of one of the wheels of the tender was broken either before or after the derailment. There was also evidence tending to show that the track was rough and in bad condition, owing to insufficient

ballasting and decayed ties, and that the speed of the train at the time was greater than usual. Under the law of the state the railroad company was liable for injuries to employés caused by the negligence of fellow servants. *Held,* that such evidence presented a case for the jury, and that it was error to direct a verdict for defendant.

In Error to the Circuit Court of the United States for the District of Minnesota.

On the 26th day of October, 1903, William B. Rickerd, while performing the duties of fireman on one of defendant in error's trains in the state of Wisconsin, was killed by the derailment of the engine on which he was employed. Laura Rickerd, as administratrix, sued the railway company to recover damages for said killing. She alleged in her complaint that the proximate cause of the killing was negligence on the part of the railroad company in certain particulars, specified in her complaint as follows: (1) That the roadbed and railroad track at the point where said engine and train became derailed was unballasted, unsurfaced, and so very rough and uneven that they were unfit, unsafe, and dangerous as a roadbed and railway track upon which to operate engines and trains; (2) that at the time said locomotive engine became derailed the locomotive engineer in charge of said engine carelessly, negligently, wrongfully, and unlawfully caused said engine and train to be propelled at a very high, dangerous, excessive, and unsafe rate of speed, and at a rate of speed much in excess of the usual and ordinary rate of speed on said railway; (3) that at the time of said derailment said engine was being operated backward.

The law of Wisconsin bearing upon the liability of the railway company is as follows: "Liability for Injuries to Employees: Section 1816. Every railroad company operating any railroad which is in whole or in part within this state shall be liable for all damages sustained within the same by any of its employees without contributory negligence upon his part: (1) When such injury is caused by a defect in any locomotive, engine, car, rail, track, machinery or appliance required by said company to be used by its employees in and about the business of their employment, if such defect could have been discovered by such company by reasonable and proper care, tests or inspections; and proof of such defect shall be presumptive evidence of knowledge thereof on the part of such company. (2) While any such employee is so engaged in operating, running, riding upon or switching passenger, freight or other trains, engines, or cars, and while engaged in the performance of his duty as such employee, and which such injury shall have been caused by the carelessness or negligence of any other employee, officer or agent of such company in the discharge of or for failure to discharge his duties as such." Rev. St. Wis. 1898.

At the trial of the case in the court below the plaintiff in error introduced evidence tending to show the following facts: Defendant in error owns and operates a line of railroad in the state of Wisconsin between the towns of Spring Valley and Woodville. On the 26th day of October, 1903, William B. Rickerd, while employed as fireman on a locomotive engine which was hauling one of defendant in error's trains on said road, was killed by the derailment of said engine and train. The train consisted of eight freight cars and one passenger coach. The railroad track at the place of the accident runs north and south. At a point north of the place of derailment 1100 feet the track is 17 feet higher than at the place of derailment, making a 1.8° grade. At a point 1500 feet south of the place of derailment the track is 30 feet higher than at the place of derailment, making a 2.5° grade. At the time of the derailment the train was going south, and the engine was being operated backward. The speed of the train was from 35 to 40 miles an hour. At the point of derailment there was a 3 per cent. curve in the track. Mr. Egan, a witness for plaintiff, testified that the roadbed at and near the point of derailment was rough and not well surfaced, the ties were old and light, the surface material between the ties was coarse, consisting of pieces of slag from two to three inches in diameter. There was no fine dirt on it, and water would run in every direction through the slag.

Harry Hall, a witness for plaintiff in error, was a passenger on the train in question, and testified that before the derailment the cars were swaying back

and forth and bobbing up and down. John Burns, a witness for the plaintiff, testified that the railroad track at the point of derailment was rough and uneven, with very little attempt to ballast it; that the condition of the ties was such that in various places you could kick them with your foot to pieces because of their being rotten. Mr. Burns, who is a locomotive engineer, also testified that it is not so safe to run an engine backward as forward, and that a maximum rate of speed of 15 to 16 miles an hour is a maximum safe rate of speed in running an engine backward, and gave it as his judgment that an engine could not be run over the track in question backward at a speed of forty miles an hour without being derailed. Mr. Gibson, another locomotive engineer, gave testimony to the same effect.

After the accident one of the wheels of the tender was found to be broken. The piece was broken out of the flange, and was about 14 inches long. The break was a fresh one. The testimony of plaintiff in error tended to show that the break occurred after the wheel left the rail. The testimony of defendant in error tended to show that the break occurred before the wheel left the rail.

Certain witnesses called by plaintiff in error testified as follows relative to the speed of the train at the time of derailment in comparison with the usual speed of the train: Katie Radbaugh: "Q. How did it run [the train] on this day in question as compared with the speed at which it ran on other occasions? A. It ran very fast, much faster than I have ever noticed it before." Marit Gronne testified: "Compared as to speed with other days when it [the train] went by, it was going faster the day it tipped over than at other times. I cannot remember that I ever saw any train go by before as fast as this." Elizabeth Gunderson testified that it seemed to her that the train ran faster at the time in question than usual. William Covell, the engineer on the train at the time in question, called by defendant in error, testified that the usual speed of the train with a heavy load as the train passed down by the charcoal kilns and over the bridge was between 30 and 35 miles an hour. The derailment occurred at the lowest point of the track between two hills, and at the middle point of the curve herein referred to. The engine was a 42-ton engine, with hauling capacity of 450 tons. The load on the cars at time of derailment was 160 tons.

The defendant introduced evidence which tended to contradict the evidence of plaintiff in error. The deceased, William B. Rickerd, had been fireman for defendant in error between four and five years on this same road, performing the same kind of service, including the manner of operating the engine, and during this time had made two trips a day over this same piece of road. At the close of all the evidence the defendant in error moved the court to direct a verdict in its favor, which motion was granted, and the case is now here on exception to such ruling.

Frank D. Larrabee (Mathias Baldwin, on the brief), for plaintiff in error.

Pierce Butler (Thomas Wilson, on the brief), for defendant in error.

Before HOOK, Circuit Judge, and CARLAND and POLLOCK, District Judges.

CARLAND, District Judge, after stating the case as above, delivered the opinion of the court.

The question presented by the record is whether, under the law of Wisconsin and the general law of negligence, a case is presented for a jury where it is shown that a train consisting of eight freight cars, a passenger coach, locomotive engine, and tender was run on a down grade on a rough track, the engine operated backward, at the rate of from 35 to 40 miles an hour to a point where the track curves, and where it commences rapidly to ascend an up grade, with breakage of the wheel

of the tender, derailment of the engine and cars, and the killing of deceased as incidents of the trip. There can be but one answer to the question. It certainly presents a question for the jury, unless there is some rule of law which will prevent a recovery. It is urged in this case that there can be no recovery, because, as matter of law, the deceased must be held to have assumed the risks and hazards of his occupation on account of his service with the railway company as fireman on the same road, in the same kind of service, for four or five years prior to the accident. When Rickerd entered upon or continued in the employment of the company, he assumed all the risks and dangers of his occupation, which were known to him, and all which a reasonably prudent man in his situation would have known. In the case of Chicago G. W. Ry. Co. v. Price, 97 Fed. 431, 38 C. C. A. 247, this court declared the law as follows:

"The rule is that the danger from the defects of the railroad or machinery furnished the employé must have been so obvious and threatening that a reasonably prudent man in his situation would have avoided them, in order to charge the injured servant with contributory negligence because he continued in the discharge of his duty, and thereby assumed the risks. Railway Co. v. Jarvi, 10 U. S. App. 439, 450, 3 C. C. A. 433, 437, 53 Fed. 65, 69; Kane v. Railway Co., 128 U. S. 91, 94, 9 Sup. Ct. 16, 32 L. Ed. 339; Railroad Co. v. McDade, 135 U. S. 554, 570, 573, 10 Sup. Ct. 1044, 34 L. Ed. 235; Cook v. Railway Co., 34 Minn. 45, 24 N. W. 311; Myers v. Iron Co., 150 Mass. 125, 22 N. E. 631, 15 Am. St. Rep. 176."

We must not lose sight of the fact, however, that the danger to which the deceased was subject under the circumstances detailed in the evidence resulted from a combination of alleged negligent acts on the part of defendant and its engineer. Neither one, perhaps, standing alone, would have caused the accident, but the rough and uneven track, the excessive speed, the running of the engine backward, the curved track at the bottom of a steep down grade where the track commenced a sharp up grade, all taken together, it is alleged, caused the derailment. Can it be said as a matter of law that by his service for four or five years as fireman deceased knew the danger to him of these combined acts of negligence, or that a reasonably prudent man in his situation would have known it? It is noticeable that both sides at the trial placed upon the stand expert witnesses as to the danger attendant upon operating an engine backward at the rate of speed and under the conditions shown by the testimony in this case. We think the question as to whether the deceased knew, or as a reasonably prudent man ought to have known, the danger of breaking the flange of the wheel and derailment by reason of the existence of the alleged acts of negligence, should have been submitted to the jury, especially in view of the testimony that the speed of the train at the time of the accident was greater than usual. This testimony cannot be brushed aside as of no weight, as its weight or the credibility of the witnesses is not for the court, but for the jury, to determine. The witnesses who testified that the speed of the train was from 35 to 40 miles an hour, and the witnesses who testified that the speed was faster than usual, corroborate each other, as the engineer called by the defendant testified that the usual speed was 30 to 35 miles an hour. We think that the evidence left the extent of the knowledge of deceased of the

danger to which he was exposed by the alleged acts of negligence of the railway company too indefinite and uncertain to warrant the trial court in withdrawing the question of his assumption of this danger from the jury.

The trial court assumed that there was no evidence as to the bad condition of the track, except the use of slag for ballasting, and, as slag was used by other railroad companies for ballasting, there was no want of ordinary care in the use of it in the present case. The assumption as to what the evidence showed, as well as the legal conclusion drawn therefrom, was erroneous. What a well-conducted railroad company may use for ballast may be evidence relevant to the issue of negligence, but the plaintiff had the right to have her case tried by a court of justice, and not by some other railroad company. The trial court, again, said that, notwithstanding the testimony of some of plaintiff's witnesses that in their opinion it was unsafe to run an engine backward faster than 15 or 18 miles an hour, it was customary among very many railroads to run engines with the tenders in front at much higher rates, and that whatever is customary on well-conducted roads is not negligence. This was an erroneous view of the case, as it took a disputed question of fact from the consideration of the jury, and announced a mistaken view of the law of negligence. The final arbiters of what shall constitute negligence under a particular state of facts are the courts of justice, and they cannot abdicate this function in favor of any one. In this class of cases the law fixes the standard; the question always being: "What would a reasonably careful and prudent man, in the exercise of ordinary care, have done under like circumstances?" Evidence of what other well-conducted railroads do in the operation of engines backward may, in a proper case, be relevant; but other railroads cannot, by their custom, deprive the plaintiff in error from having the question as to whether the operation of the engine backward under the conditions which she claims existed in this case, and in face of the fact that she introduced evidence that to so operate them faster than 15 to 18 miles an hour is dangerous, and that to so operate them is not as safe as to operate them in the regular way, submitted to a jury for determination. The trial court was also of the opinion that there was not sufficient evidence to warrant the jury in finding that the derailment was caused by any other cause than the breaking of the flange of the wheel on the tender, and, as there is no complaint made as to any negligence in regard to the wheel, there could be no recovery. The proximate cause of the derailment in this case was for the jury, and the testimony left that question in doubt, but the plaintiff in error had the right to claim, as a reasonable inference from the evidence, that the acts of alleged negligence on the part of defendant in error broke the flange of the wheel of the tender. It would not be an improbable thing, and certainly not impossible.

The judgment of the trial court must be reversed, and a new trial ordered.