## MIDLAND VALLEY R. CO. v. BELL.

(Circuit Court of Appeals, Eighth Circuit. April 6, 1917. Rehearing Denied June 22, 1917.)

### No. 4752.

1. MASTER AND SERVANT ☞286(26)—RAILROADS—ACTION FOR DEATH OF EMPLOYÉ—QUESTIONS FOR JURY.

Evidence, in an action against a railroad company to recover for the death of an engineer caused by the collapse of a bridge over which he was passing with a train, *held* to warrant the submission to the jury of the question of defendant's negligence in permitting the bridge to become decayed, out of repair, and unsafe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1031.]

2. TRIAL ☞140(1)—DIRECTION OF VERDICT.

A motion for direction of a verdict is in the nature of a demurrer to the evidence and is to be tested by the same rules; if there are any questions as to the credibility of witnesses or the proper deductions to be drawn from the evidence, they are for the jury, and not for the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 334.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. MASTER AND SERVANT ☞105(3)—STANDARD OF CARE—CUSTOM.

The standard of reasonable care on the part of a railroad company to keep a bridge in safe condition for its employés is not fixed by the custom of inspection of well-managed companies generally, but, while such custom is admissible, the question is one of fact in each case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 188–190.]

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action by Armor Bell, administratrix of the estate of John Bell, deceased, against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

O. E. Swan, of Muskogee, Okl. (Farrar L. McCain, of Tulsa, Okl., on the brief), for plaintiff in error.

C. B. Randell, of Sherman, Tex. (Randell & Randell, of Sherman, Tex., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and RINER and MUNGER, District Judges.

RINER, District Judge. This action was brought, under the federal Employers' Liability Act, by Armor Bell, as administratrix of the estate of John Bell, deceased, defendant in error, against the Midland Valley Railroad Company, plaintiff in error, to recover damages for the death of said John Bell, which she alleges was caused by the negligence of the railroad company. For convenience the defendant in error will hereafter be referred to as the "plaintiff," and the plaintiff in error as the "defendant." The case was commenced in the state court and removed by the defendant to the United States District Court for the Eastern District of Oklahoma.

The acts of negligence on the part of the defendant, complained of, are set out in the amended petition as follows:

"Fourth. That the wreck of said train and the said resulting injuries to and death of said John Bell, deceased, came about in the following manner, to wit: That on said date and at said place while deceased was riding in the cab of the engine pulling said train, and while carefully and properly discharging his said duties as engineer, a trestle, or bridge, in defendant's said track, over which said engine and train was then and there running, broke, gave way and fell beneath said engine and train, thereby overturning said engine and wrecking it and said train, and causing the injuries to and death of said John Bell, as aforesaid.

"Fifth. That the said injuries and death of the said John Bell were caused by no fault on his part, but by the gross negligence and want of ordinary care of the defendant, its officers, agents, servants and employés.

"Plaintiff alleges that the said engine upon which deceased was riding and all the parts thereof, were old, worn, unbalanced, and insufficiently fastened, out of gauge and out of plumb; and that the track, bridge, trestle. abutments, roadbed, ties, supports, rails, spikes, bolts, braces, timbers, piling, and all the parts, appliances and fastenings of said bridge, trestle and track at the time and place plaintiff was injured, as aforesaid were insufficiently supported, old, worn, warped, bent, broken, cracked, rotten, weak, out of line, and each and all of said conditions directly and proximately caused and contributed to deceased's injuries, as aforesaid.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Plaintiff charges that the defendant, its officers, agents, servants, and employés in causing and permitting the conditions aforesaid, and in using the track, bridge, trestle, and engine, as aforesaid, was guilty of gross negligence and want of ordinary care, which directly and proximately caused and contributed to deceased's said injuries, and deceased would not have been injured but for same; that the defendant well knew of each and all of said conditions hereinbefore stated, or by the exercise of ordinary care would have known of same, but the same were unknown to plaintiff."

The answer contained a general denial, and also charged that the deceased was guilty of contributory negligence. No proof was offered, however, in support of the charge of contributory negligence, and, as counsel say in their brief, for the purposes here the answer may be treated as a general denial. There was a trial, verdict, and judgment for the plaintiff in the sum of $12,240.

The record shows that the plaintiff was the duly appointed administratrix of the estate of John Bell, deceased; that she was a resident and citizen of the Eastern district of the state of Oklahoma; and that the defendant was a corporation organized and existing under the laws of the state of Arkansas and a citizen and resident of that state.

The petition charges that on the 12th day of September, 1913, the defendant owned and operated a line of railroad in the state of Arkansas, extending into and through the state of Oklahoma; and it is admitted in the brief of counsel for the defendant that both the deceased and the defendant were at that time engaged in interstate commerce.

The following facts were established by the evidence:

[1] That at the time mentioned in the pleadings, on the line, and forming a part of, defendant's railroad near the town of Kanima, Okl., there was a wooden bridge known as a pile and frame bent trestle, about 225 feet in length, across a ravine, or "branch," as some of the witnesses called it; that the height of the bridge from the bottom of the ravine to the base of the rail was 35 feet. The bridge consisted of 16 bents. Bents 1 and 2 and 14, 15, and 16 are what the witnesses call "pile bents"; that is, the bridge rested upon oak piling driven into the ground. All of the other bents were framed bents. These framed bents rested upon mud sills and mud blocks embedded in the ground. The timber used in the construction of these framed bents was No. 2 Arkansas pine and 12x12 inches square, except the stringers, which were 8x16 inches. The deck of the trestle was 3-ply cord under each rail, consisting of three 8x16 inch stringers and spread sufficiently far apart to permit of 2x16 inch packing boards 5 feet in length to be placed between the line of stringers. These and the stringers were bolted together over each bent with $3/4$ inch bolts. Upon this deck the ties and rails were placed, the ties being 8x8 inches, spaced 12 ties to the panel, the panels being 14 feet 9 inches each between the bents. Extending from one bent to the other crosspieces or sway braces were fastened to the bents to hold the main members of the bridge in position and prevent them from vibrating.

In March, 1912, more than a year before the accident complained of, the bridge was repaired by taking out some of the timbers which had become decayed and sap rotted, and replacing them with new tim-

bers; about 15 per cent. of the timbers being thus taken out and replaced.

On the 12th of September, 1913, John Bell, husband of the plaintiff, was a locomotive engineer in the employ of the defendant and on that date was in charge of one of its engines hauling a freight train consisting of flat cars, loaded oil cars, and some empty coal cars. The train left Muskogee about 9 o'clock in the evening of the 11th, and had proceeded eastward toward Ft. Smith, about 55 miles, arriving at this bridge near 1:25 on the morning of the 12th. When the train was upon the bridge in question and the engine about 25 or 30 feet from the east end thereof, that part of the bridge under and for some distance back of the engine collapsed and with the engine and a few cars fell to the ground below, and Bell, the engineer, was caught under the engine and instantly killed. After the bridge fell, it took fire, and the entire structure was destroyed so that it was impossible to determine, from an examination, the condition of the timbers at the time of the accident. In addition to the foregoing facts, which were not disputed, the plaintiff offered testimony tending to prove that many of the timbers in the bridge were badly rotted and a large part of them more or less decayed and unsound. The testimony on behalf of the defendant tended to prove that a general inspection of the bridge was made a short time before it was repaired in 1912; that it had been inspected several times between that date and the date of the accident; and that the timbers at the time of the accident were not decayed to such an extent as to render the bridge unsafe. Plaintiff also offered evidence tending to show that the sway braces consisted of pine boards 10 and 12 inches wide and 2 inches thick; that these braces were fastened to the upright pieces with iron bolts; that some of them were split where the bolts went through and, as one witness stated it: "And down near the end they would be busted where the bolts went through them into the piling." Mr. Kaighn, chief engineer of the defendant, testified that the braces were necessary to the safety of the bridge. Having his attention especially called to these braces, he was asked:

"Q. Then suppose they are loose, would that be safe or dangerous? A. If they are loose sufficiently that they don't support, they are not doing their work and weakens the efficiency of the bridge. Q. And it would be likely to fall by reason of not being supported in the proper way? A. That is true. Q. And the running of a train over it would be likely to cause it to fall? A. Have that tendency, yes. Q. And if the braces where the bolts go through, if they are worn, that would make it loose wouldn't it? A. Yes. Q. And a split would make it very much weaker? A. Yes. Q. That would be practically taking away the brace? A. Yes. Q. Because if there was any swing at all the bridge couldn't stand and the brace has got to be held exactly in place, or else, when it begins to give, it would have the effect of making it continuous and progressive? A. Yes, that is the tendency of it."

We do not deem it necessary to quote more at length from the testimony, as the references already made are quite sufficient to show that the case was properly one for the determination of the jury, and we think the motion for a directed verdict in favor of the defendant at the close of the evidence was rightly overruled.

[2] A motion of this character, as has often been said, is in the nature of a demurrer to the evidence.

"It answers the same purpose and should be tested by the same rules. A demurrer to evidence admits, not only the facts stated therein, but also every conclusion which a jury might fairly or reasonably infer therefrom." Schuchardt v. Allens, 1 Wall. 359, 370, 17 L. Ed. 642.

In deciding such a motion, the trial court is bound to assume that all of the evidence in the case is true and that the witnesses were all credible. If there are any questions in the case as to the credibility of the witnesses or the proper deductions to be drawn from the evidence, they are questions, not for the court, but for the jury under the direction of the court. In Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642, Mr. Justice Brewer states the rule in these words:

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

It is quite true, as the court charged the jury in this case, that the defendant was not an insurer of the safety of its bridges or trestles as far as its engineers and other employés were concerned, and the mere fact that a bridge or trestle falls is not sufficient of itself to establish the liability of the company to pay resultant damages. It was its duty, however, to see to it, by the exercise of ordinary care, that this bridge was kept in good repair and in a safe condition, and this duty could not be delegated so as to exonerate the defendant from liability to its servants resulting from the omission to perform it or through its negligent performance; and, in view of the conflicting character of the testimony in relation to the condition of the timbers and braces, we think the question whether the defendant was negligent in the matter of keeping this bridge in repair was clearly a question to be determined by the jury. So long as the laws provide for a jury trial of issues of fact, the right should be guarded and preserved in all cases where there are controverted facts pertinent to the issues.

[3] It is also insisted that the court erred in refusing to give to the jury the following instructions requested by the defendant:

"You are instructed that if you find from the evidence that the defendant had inspected this bridge prior to the accident, and that such inspections as to time and manner were in accordance with the custom of other well-regulated railroad companies and that such inspection failed to disclose any defects in the bridge, then your verdict must be for the defendant."

"You are instructed in this case that if the defendant had caused the bridge to be inspected a short while before its collapse by men experienced in that line of work, and that the inspection made was such as is ordinarily and customarily made of bridges of similar character by other well-regulated railroads in the state of Oklahoma, and that said inspection did not disclose any defects alleged in plaintiff's petition, then and in that event the defendant discharged its duty, and the plaintiff cannot recover in this case."

We think these requests were properly denied. They confuse the controlling standard of ordinary care with what is only evidence of it. Unquestionably it was permissible, as was done in this case, to show what inspections were made by other railroads of their bridges, for that is some evidence of what could have been and ought to have been

done by the defendant in this case; but evidence of that character is not indispensable, for the ultimate and controlling test always is, not what has been the practice of others in like situations, but did the defendant in this case exercise reasonable or ordinary care, that is, such care as a reasonably prudent person would ordinarily have exercised in such a situation. As was said by this court in Chicago, Milwaukee & St. Paul Ry. Co. v. Moore, 166 Fed. 663, 92 C. C. A. 357, 23 L. R. A. (N. S.) 962:

"The law is not so unreasonable as to afford no test where there has been no practice by others by which the conduct in question can be compared; nor does it permit common sense and reason to lose their sway because, through ignorance, inattention or selfishness, an unreasonable practice has prevailed." Chicago Great Western Ry. v. McDonough, 161 Fed. 657, 665, 88 C. C. A. 517, and authorities there cited.

See, also, Rickerd v. Chicago, St. P., M. & O. Ry., 141 Fed. 905, 73 C. C. A. 139.

In Wabash Ry. Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605, the Supreme Court, speaking through Mr. Justice Harlan, said:

"If the general practice of such corporations in the appointment of servants is evidence which a jury may consider in determining whether, in the particular case, the requisite degree of care was observed such practice cannot be taken as conclusive upon the inquiry as to the care which ought to have been exercised. A degree of care ordinarily exercised in such matters may not be due, or reasonable, or proper care, and therefore not ordinary care, within the meaning of the law."

And in Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905, Mr. Justice Holmes states the rule as follows:

"Instead of that, the court left it to the jury to say whether the train was handled with ordinary care; that is, the care that a person of ordinary prudence would use under the same circumstances. This exception needs no discussion. The charge embodied one of the commonplaces of the law. What usually is done may be evidence of what ought to be done; but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Shandrew v. Chicago, Milwaukee & St. Paul Ry. Co., 142 Fed. 320, 73 C. C. A. 430.

Some other requests for instructions were made by the defendant and denied by the court, but we do not deem it necessary to discuss them separately. We think the instructions given by the court to the jury fairly stated the law and were quite as favorable to the defendant as it had a right to ask.

The action of the trial court in declining to admit in evidence testimony tending to show that some eight months or more prior to the time of this accident, and at a place a mile or more distant from this bridge, an obstruction was placed upon the track, was also assigned for error. The testimony related to matters altogether too remote to be considered by the jury, as there was nothing in the evidence tending even remotely to prove that there was any obstruction on the track at the time of the accident. The fireman, who was in the best possible position to know, was called as a witness for the defendant, but was not questioned in regard to the matter.

The other assignments of error have all been thoughtfully considered and found to be without merit.

The judgment of the district court is affirmed.