[Civ. No. 9351. First Appellate District, Division Two.—December 19, 1934.]

ALEXANDER J. HASKINS, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

178

Elliott Johnson and D. W. Brobst for Appellant.

Erwin P. Werner, Clifton Hildebrand and Thomas F. Mc-Cue for Respondent.

SPENCE, J.—Plaintiff, a brakeman in the employ of the defendant Southern Pacific Company, suffered injuries in the course of his employment. He prosecuted this action under the Federal Employers Liability Act (sec. 51, tit. 45, U. S. C. A.). Upon a trial by jury, plaintiff had judgment for the sum of $25,000, and from said judgment defendant appeals.

The accident occurred at about 1 o'clock on the morning of August 10, 1932, at a siding called Numana in the state of Nevada. Plaintiff had been a railroad man for many years and had worked for the defendant company as a brakeman from 1926 until the date of the accident. He was in-

jured while performing his duties during a switching operation at the time and place mentioned.

The siding at Numana was approximately a half mile in length. The freight train, consisting of some 66 cars, arrived there headed railroad east. The freight which was to be unloaded at Numana was located in the sixth car back from the engine. Six cars were uncoupled or cut from the main train, were pulled easterly along the main track and were then backed westerly along the sidetrack to the freight shed, which was located near the westerly end of the siding. The freight was unloaded, and the "cut" of cars was again pulled in an easterly direction along the sidetrack. Plaintiff boarded one of the these cars and with a lantern in hand, he watched the main train for "hot boxes" as the six cars were being drawn back along the sidetrack to the head of the train. It was his intention to ride to a point near the head of the train, to get off and to stand for the purpose of making a "rolling inspection" for defects in the cars as the train pulled out of Numana. When plaintiff reached a point near where the "cut" had been made, he got off the car on which he was riding, and in doing so, his foot caught in a growth of umbrella plant which was growing between the main tracks and the sidetracks. He stumbled and as he fell his feet were thrown toward the moving cars. He was seriously injured, the main injuries consisting of the loss of his right leg below the knee and the crushing of his left foot.

A description should be given of the so-called umbrella plant which was permitted to grow around the siding and between the main track and sidetrack involved. Its botanical name is eriogonum deflexum, commonly known as either umbrella plant or skeleton plant. Several pictures and specimens of the plant were introduced in evidence as well as the testimony of an expert witness. It is a hardy desert plant, the stem of which grows up from 5 to 7 inches from the ground and then branches, the branches growing in "whorls" or in a circle. These branches grow out from 5 to 8 inches and then branch again. The plant grows to an average height of 12 to 14 inches with a lateral spread of from 12 to 15 inches. The branches grow out in various forms from the main stems, which are usually clustered, and the branches of the plants become intertwined leaving a 5 or

6 inch space underneath. The roots of the plant go down from 7 to 9 inches. The stem and structure of the plant consist of fiber similar to bast, with a tensile strength or resistance of from 5 to 100 pounds. This tensile strength or resistance is greatest in August and September. In other words, this plant is quite different in structure and in strength from ordinary grass or the common variety of weeds which may be found in other localities.

The main contention of appellant is that "there was no negligence". This contention amounts to a claim that the evidence was insufficient to support the jury's implied finding of negligence. We find no merit in this contention. It is not disputed that this siding was a place where respondent and other employees were required to perform their duties in switching operations nor is it disputed that said employees were required to get on and off moving trains in the night-time as well as the daytime in performing such duties. Under these circumstances, we believe that there was sufficient evidence to support the implied finding that appellant was negligent in permitting plants of the type mentioned to grow and remain upon said siding. Our attention has not been called to any authority directly in point, but there are numerous cases in which liability for negligence has been imposed upon railroad companies for injuries in employees caused by obstructions, such as a metal hoop, large clinkers, old crossties, pieces of coal, rails, a pile of gravel, a wire, a deposit of sand, a limb of a tree or a brake shoe, which were allowed to remain on rights of way in places where employees were required to work. (*Baltimore & O. R. Co.* v. *Flechtner*, 300 Fed. 318, *certiorari* denied 266 U. S. 613 [45 Sup. Ct. 95, 69 L. Ed. 468]; *Southern Ry. Co.* v. *Puckett*, 244 U. S. 571 [37 Sup. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69]; *Burks* v. *Atchison, T. & S. F. Ry. Co.*, 83 Kan. 144 [109 Pac. 1087]; *St. Louis Southwestern Ry. Co. of Texas* v. *Ford*, 56 Tex. Civ. App. 521 [121 S. W. 709]; *Adskim* v. *Oregon-Washington R. & Nav. Co.*, 129 Or. 169 [276 Pac. 1094], and 134 Or. 574 [294 Pac. 605]; *Doyle* v. *St. Louis Merchants' Bridge Terminal Ry. Co.*, 326 Mo. 425 [31 S. W. (2d) 1010]; *Thomas* v. *Southern Pacific Co.*, 116 Cal. App. 126 [2 Pac. (2d) 544]; *Green* v. *Atlantic Coast Line R. Co.*, 136 S. C. 337 [134 S. E. 385]; *El Paso & S. W. Ry. Co.* v. *Alexander*, (Tex. Civ. App.) 117

S. W. 927; *Gillespie* v. *Grand Trunk R. Co. of Canada,* 150
Mich. 303 [113 N. W. 1116]; *Holloway* v. *Missouri, K. &
T. Ry. Co.,* 276 Mo. 490 [208 S. W. 27]; *Hicks* v. *Missouri
Pac. R. Co.,* 226 Mo. 362 [40 S. W. (2d) 512].) In some of
the cases cited certain types of obstructions were concealed
by grass or weeds and although mention is made of such
grass or weeds, it was not the grass or weeds alone which
caused the injuries. We see no reason, however, why plants
of the type involved in the present case might not be said
to constitute dangerous obstructions in themselves in places
where employees are required to do the work described.
Under the evidence presented here, we believe that the jury
was entitled to so find. All that need be said is that rea-
sonable minds might differ on this question and therefore
the finding of the jury may not be disturbed on appeal.

*Wood* v. *Canadian Pacific Ry. Co.,* 30 Canada S. Ct. 110,
and *McCutcheon* v. *Chicago, M. & St. P. Ry. Co.,* 181 Iowa,
501 [164 N. W. 774], are cited by appellant. These authori-
ties are not determinative of the issue before us for several
reasons, but we believe it is only necessary to refer to one
or two of the distinguishing features. In neither case was
the court dealing with a plant growth similar to umbrella
plant which, from its description, constitutes a far greater
hazard than ordinary grass or weeds. Furthermore, the
Wood case was decided largely upon the fellow-servant de-
fense which is not applicable under the Federal Employers
Liability Act, while the McCutcheon case appears to have
been disposed of under the doctrine of assumption of risk
upon facts which were not similar to those before us.

█ We now come to appellant's main point which un-
derlies both the foregoing contention and other contentions
found in the briefs. It should first be stated that appel-
lant produced several witnesses in an endeavor to show the
general custom and usage of railroad companies operating
in the state of Nevada with respect to the maintenance of
similar sidings. Appellant claims that the undisputed evi-
dence showed that the siding in question was maintained in
the same manner as other similar sidings in the state of
Nevada and that therefore appellant is not chargeable with
negligence as it conformed with the standard of conduct
established by general custom and usage. In other words,
appellant takes the position that its standard of care was

fixed by such general custom or usage rather than by the rules by which the standard of care is ordinarily measured. We cannot agree with the position taken by appellant in this regard.

We will assume for the purpose of this discussion that the evidence of custom and usage was clear and undisputed. We do not mean to decide, however, that the record before us presents clear and undisputed evidence on this subject. Practically all of appellant's witnesses conceded in effect upon cross-examination that it was the custom of railroads generally or of their particular roads to remove plant growth from sidings whenever it appeared to constitute a hazard or a dangerous obstruction to men working on switching operations. Furthermore, there was abundant evidence to show that at all times prior to the year in which the accident happened, the appellant company had made a practice of removing the growth of umbrella plant from its sidings, including the Numana siding. But assuming that the undisputed evidence showed that at the time of the accident the Numana siding was maintained according to the general custom and usage of railroads in Nevada with respect to similar sidings, we are still of the opinion that such evidence did not, as a matter of law, show that appellant was free from negligence.

There are many authorities from both the federal and state courts dealing with the effect of evidence of custom and usage upon the issue of negligence. It is generally held that evidence of custom and usage in a given business or industry is admissible upon the issue of negligence and some of the authorities appear to go further and to hold that it is not only evidence of the standard of care required but that it conclusively establishes, as a matter of law, the standard of care to be applied in determining the issue of negligence. We believe, however, that the authorities last mentioned and upon which appellant relies represent the minority view and that the weight of authority in both the federal and state courts establishes the contrary rule. We shall not attempt to cite or discuss the numerous cases arising in the state courts for the decisions of the federal courts are controlling here.

This subject is discussed in Roberts on Federal Liability of Carriers. In section 534 thereof, under the heading "Cus-

tom or Practice of Other Railroad Not Conclusive in Determining Exercise of Ordinary Care", we find the following: "The standard of duty under the Federal Act upon all common carriers is ordinary care, that is, the care that a person of ordinary prudence would use under the same circumstances. The custom or practice of other carriers may be admissible as evidence to determine whether ordinary care was exercised in a particular case; but evidence of that character is not conclusive, for *the ultimate and controlling test always is, not what has been the practice of others in like situations, but did the defendant in the case under investigation exercise such care as a reasonably prudent person would ordinarily have exercised in such a situation?* The law does not permit what ought to have been done to be determined in the particular case by the practice of others; for the degree of care exercised by them may not be due, reasonable or proper, and, therefore, not ordinary care within the meaning of the law. The law does not permit reason and common sense to lose their sway because, through ignorance, inattention or selfishness, an unreasonable practice prevails." (Italics ours.)

Several cases which have been decided by the United States Supreme Court and other federal courts fully sustain the text above quoted. In *Midland Valley R. Co.* v. *Bell*, 242 Fed. 803, the court reviewed several of these decisions in passing upon the propriety of the rulings upon certain proposed instructions. At pages 807 and 808 (242 Fed.) of the opinion the court there said:

"We think these requests were properly denied. They confuse the controlling standard of ordinary care with what is only evidence of it. Unquestionably it was permissible, as was done in this case, to show what inspections were made by other railroads of their bridges, for that is some evidence of what could have been and ought to have been done by the defendant in this case; but evidence of that character is not indispensable, for the ultimate and controlling test always is, not what has been the practice of others in like situations, but did the defendant in this case exercise reasonable or ordinary care, that is, such care as a reasonably prudent person would ordinarily have exercised in such a situation. As was said by this court in *Chicago, Milwaukee & St. Paul Ry.*

*Co.* v. *Moore,* 166 Fed. 663 [92 C. C. A. 357, 23 L. R. A. (N. S.) 962]:

" 'The law is not so unreasonable as to afford no test where there has been no practice by others by which the conduct in question can be compared; nor does it permit common sense and reason to lose their sway because, through ignorance, inattention or selfishness, an unreasonable practice has prevailed.' (*Chicago Great Western Ry.* v. *McDonough,* 161 Fed. 657, 665 [88 C. C. A. 517], and authorities there cited.)

"See, also, *Rickerd* v. *Chicago, St. P., M. & O. Ry.,* 141 Fed. 905 [73 C. C. A. 139].

"In *Wabash Ry. Co.* v. *McDaniels,* 107 U. S. 454 [2 Sup. Ct. 932, 27 L. Ed. 605], the Supreme Court, speaking through Mr. Justice Harlan, said:

" 'If the general practice of such corporations in the appointment of servants is evidence which a jury may consider in determining whether, in the particular case, the requisite degree of care was observed, such practice cannot be taken as conclusive upon the inquiry as to the care which ought to have been exercised. A degree of care ordinarily exercised in such matters may not be due, or reasonable, or proper care, and therefore not ordinary care, within the meaning of the law.'

"And in *Texas & Pacific Ry. Co.* v. *Behymen,* 189 U. S. 468 [23 Sup. Ct. 622, 47 L. Ed. 905], Mr. Justice Holmes states the rule as follows:

" 'Instead of that, the court left it to the jury to say whether the train was handled with ordinary care; that is, the care that a person of ordinary prudence would use under the same circumstances. This exception needs no discussion. The charge embodied one of the commonplaces of the law. What usually is done may be evidence of what ought to be done; but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.' (*Shandrew* v. *Chicago, M. & St. Paul Ry. Co.,* 142 Fed. 320 [73 C. C. A. 430].)"

In addition to the cases referred to in the foregoing opinion, see *James Baird Co.* v. *Boyd,* 41 Fed. (2d) 578, *Baltimore & Ohio R. R. Co.* v. *Whitacre,* 124 Md. 411 [92 Atl. 1060], affirmed in 242 U. S. 169 [37 Sup. Ct. 33, 61 L. Ed. 228]; *Parker* v. *Cushman,* 195 Fed. 715, and *American Car & Foundry Co.* v. *Uss,* 211 Fed. 862.

For a further discussion of the general subject, see Wigmore on Evidence, second edition, section 561. The author there says: "The chief difficulty here is of another sort. It arises from the necessity of distinguishing between the use of such facts evidentially and their use as involving a standard of conduct in substantive law. The distinction is in itself a simple one. (1) The conduct of others *evidences* the tendency of the thing in question; and such conduct— e. g., in using brakes on a hill, felt shoes in a powder factory, railings around a machine, or in not using them— is receivable with other evidence showing the tendency of the thing as dangerous, defective, or the reverse. But this is only evidence. The jury may find from other evidence that the thing was in fact dangerous, defective, or the reverse, and the maintenance was or was not negligence, in spite of the above evidence. (2) Meanwhile, the *substantive law* tells them what the *standard of conduct* for negligence is; and this standard is a fixed one, independent of the actual conduct of others. To take that conduct as furnishing a sufficient legal standard of negligence would be to abandon the standard set by the substantive law, and would be improper. This conduct of others, then, (1) is receivable as some evidence of the nature of the thing in question, because it indicates what is the influence of the thing on the ordinary person in that situation; but (2) it is not to be taken as fixing a legal standard for the conduct required by law.

"This distinction is patent enough, but it is sometimes judicially ignored. Such evidence is sometimes improperly excluded on the erroneous supposition that the mere reception of it implies that it is to serve as a legal standard of conduct. The proper method is to receive it, with an express caution that it is merely evidential and is not to serve as a legal standard."

Appellant cites and relies upon *Canadian Northern Ry. Co.* v. *Senske,* 201 Fed. 637, but this case apparently expresses the minority view on the subject. In an earlier case decided by the United States Supreme Court, the existence of this minority view was recognized but was expressly repudiated as not based upon satisfactory reasoning. (*Wabash Ry. Co.* v. *McDaniels,* 107 U. S. 454, at pages 460 and 461 [2 Sup. Ct. 932, 27 L. Ed. 605].) It is of interest to note that the case of *Canadian Northern Ry. Co.* v.

*Senske, supra,* was decided by the Circuit Court of Appeals of the Eighth Circuit, and that the views expressed in the majority opinion in that case were contrary to those expressed in the previous decisions of the same court. (*Chicago, M. & St. P. Ry. Co.* v. *Moore,* 166 Fed. 663; *Chicago Great Western Ry. Co.* v. *McDonough,* 161 Fed. 657; *Parker* v. *Cushman,* 195 Fed. 715.) The concurring opinion in that case is in accord with the views previously expressed by said court and the views hereinabove set forth. It is also of interest to note that the holding in that case was not followed in the later decisions of the same court. (*American Car & Foundry Co.* v. *Uss, supra; Midland Valley R. Co.* v. *Bell, supra.*)

██ Perhaps the apparent conflict in the decisions and the language employed therein may be reconciled to some extent. This may be illustrated by appellant's argument in the present case, together with a consideration of two instructions given by the trial court. In the reply brief, appellant argues that "The law permits but one means of showing that the defendant failed to use ordinary care or was negligent, and that is by proving that it failed to maintain the siding in question in conformity with conditions as they existed on sidings located on other railroads under similar circumstances." In line with this proposition, appellant requested and the trial court gave an instruction stating that "a railroad company is not bound to furnish a better or different track and grounds adjacent thereto than such as were in general use". In our opinion, appellant's argument is unsound and expresses what we have heretofore termed the minority view. It therefore follows that the above-quoted instruction was more favorable to appellant than it was entitled to have it. The trial court also instructed the jury as follows: "The test of whether or not any railroad company is guilty of negligence in adopting any particular method of maintaining its properties is whether *reasonably prudent* persons or corporations engaged in similar business and activity *would have conducted* their business under similar circumstances in the same manner." (Italics ours.) We believe this last-mentioned instruction to be a correct statement of the law and wholly in accord with the majority view as found in the authorities above cited with approval. The distinction is obvious between the tests set forth in the foregoing instructions.

"The ultimate test always is, not what has been the practice of others in like situations, but did the defendant in the case under investigation exercise such care as a reasonably prudent person would ordinarily have exercised in such a situation?" (Roberts on Federal Liability of Carriers, *supra*.) The custom or practice of others is admissible as some evidence of the standard to be applied but such evidence is not conclusive upon the jury in fixing that standard. It remains for the jury to determine whether the custom of others represents the practice of "reasonably prudent persons".

Keeping the above distinction in mind and analyzing the authorities relied upon in *Canadian Northern Ry. Co.* v. *Senske, supra,* it is apparent that many of said authorities do not support the decision. The court there held that an instruction defining the standard of care as "such as is used by railway companies in the general transaction of their business in that respect" should have been given. It further held that under the evidence the trial court should have instructed a verdict in favor of the defendant. It did so upon the theory that the evidence of custom was uncontradicted and that it was to be presumed that other railroads, their officers and employees discharged their legal duties and acted as reasonably prudent persons in the conduct of their business. It points out that there was no evidence to controvert this presumption. But what evidence could have been given upon this subject other than the evidence of the conduct itself, which evidence was before the jury? No witness would have been permitted to state his opinion that such conduct was negligent or that the custom was not such as would have been followed by reasonably prudent persons. An attempt to introduce such testimony would have amounted to an attempt to invade the province of the jury and an objection thereto would have been promptly sustained. The effect of the decision is to make custom the absolute test of the standard of care and to take from the jury the determination of whether the conduct establishing the custom was the conduct of "reasonably prudent persons". Many of the cases cited in the opinion lend no support to this doctrine and are clearly distinguishable. The proper rule as established by the authorities above cited is indicated in the concurring opinion where it is said: "I do not agree to some parts of the fore-

going opinion regarding the effect of custom upon the question of the care to be exercised by a particular employer. What is generally done in the like calling or occupation to prevent injuries is, of course, evidence of the proper precaution but it is not more. It seems to me that here it has been given an undue if not, practically, a controlling influence." '

From what has been said, we conclude that the evidence of custom in the present case, even if such evidence be treated as clear and undisputed, was not conclusive upon the jury in establishing the standard of care applicable to appellant and we further conclude that there was sufficient evidence to support the jury's implied finding of negligence on the part of appellant. ■ Respondent was not required to plead or prove such custom and it therefore follows that appellant's contentions relating to the pleading and proof of custom may not be sustained.

■ Closely related to the points above discussed is appellant's contention that the trial court committed prejudicial error in refusing to admit certain photographs in evidence. These photographs showed the condition of certain sidings in the San Francisco Bay region. We find no prejudicial error in such refusal. At best, this evidence was merely cumulative as there was abundant testimony in the record relating to the custom of other railroads with respect to the maintenance of sidings similar to the Numana siding, and, furthermore, it is not claimed that the weed growth in the bay area as shown on these photographs was similar to the umbrella plant which appellant permitted to grow and remain upon the siding at Numana.

■ Appellant further contends that respondent "assumed the risk of the natural growth of weeds". We believe, however, that this was a question of fact for the jury in the present case rather than one of law. (*Mappin* v. *Atchison, Topeka etc. Ry. Co.*, 198 Cal. 733 [247 Pac. 911, 49 A. L. R. 1330]; *certiorari* denied, 273 U. S. 729 [47 Sup. Ct. 239, 71 L. Ed. 862].) There was some conflict, but there was abundant evidence to show that for several years prior to 1932 it had been the practice of appellant to maintain section crews for the purpose, among others, of removing weeds from the right of way and that prior to 1932 there had never been any weeds growing on the siding at Numana. The evidence further showed that the umbrella plant on the

Numana siding in 1932 had been growing there for many months, but that no notice had been given by appellant to its employees regarding any change of policy with respect to clearing weeds from said siding. It also appears that the last trip that respondent had made through Numana as a freight brakeman prior to the accident was in October, 1931, and that during the interval, he had made but one trip through Numana as a passenger brakeman on which last-mentioned trip he had no occasion to observe and did not observe the condition of the siding. If the jury believed this testimony rather than the testimony offered by appellant regarding its previous practice, such evidence was ample to sustain its implied finding that respondent did not assume the risk of the hazard created by changing such practice and permitting the umbrella plant to grow upon said siding without giving notice to its employees of such change. Appellant quotes and relies upon *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492 [34 Sup. Ct. 635, 640, 58 L. Ed. 1062, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1]. In that case the court states that "such dangers as are normally and necessarily incident to the occupation"—are assumed by the employee "whether he is aware of them or not". Under the evidence above set forth, the danger here was neither normally nor necessarily incident to the occupation. The cited case further points out that there are other risks not falling within the class mentioned but arising "out of the failure of the employer to exercise due care". As to these, it is said: "These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." The jury here was entitled to find under the evidence presented that the risk in question fell in the class just mentioned, that respondent was not aware thereof, and that neither the existence of the umbrella plant nor the risk occasioned thereby would be so obvious that an ordinarily prudent person engaging in similar switching operations during the middle of the night would have observed and appreciated them.

Appellant also contends that the trial court committed reversible error in giving certain instructions. The act provides that contributory negligence of the employee

shall not bar a recovery "but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee". The court instructed the jury in the language of the act. This was proper. (*Kippenbrock* v. *Wabash R. Co.*, 270 Mo. 479 [194 S. W. 50].) It further instructed the jury on this subject in the following language: "Under this Federal Act the rule of comparative negligence applies, and that means that where the causal negligence is partly attributable to the plaintiff and partly attributable to the defendant, the amount recoverable is the proportionate amount as the negligence attributable bears to the entire negligence attributable to both the plaintiff and the defendant." The language used in said instruction finds approval in *Norfolk & Western Ry.* v. *Earnest*, 229 U. S. 114 [33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172].

Before setting forth the instruction at which appellant directs its main attack, we may well pause to consider the application of the foregoing instructions. If a defendant is chargeable with the entire negligence causing the injury, then of course the employee is entitled to the amount which will fully compensate him for the damage sustained. Let us assume that said amount is $30,000. If the negligence causing the said injury is partly attributable to the defendant and partly attributable to the plaintiff, then the rules set forth in the above instructions apply and the recovery must be diminished. The same result is reached under either of the above-mentioned instructions. If the jury determines that the parties are equally negligent, or, in other words, if one-half of the negligence is attributable to each, then the verdict should be $15,000. If the jury determines that the negligence is attributable one-third to plaintiff and two-thirds to defendant, then the verdict should be $20,000. Likewise, if the jury determines that the negligence is attributable two-thirds to plaintiff and one-third to defendant, the verdict should be $10,000. In each case, the verdict is diminished in proportion to the amount which plaintiff's negligence bears to the combined negligence of both plaintiff and defendant, or, to put it another way, such verdict is computed by allowing plaintiff the proportionate amount which the negligence of defendant bears to the combined negligence of both plaintiff and defendant.

192

■ Another instruction was given on this subject containing the following wording: "then you should reduce the verdict, if you find in favor of the plaintiff, in the proportion which plaintiff's negligence bears to the negligence of the defendant Southern Pacific Company, or its employees, if you find the defendant was negligent". Appellant attacks the last-mentioned instruction, citing *Norfolk & Western Ry. v. Earnest, supra,* and claiming that the giving of said instruction constituted prejudicial error. Said instruction did not correctly state the law, but our inquiry may not end there. Was the giving of said instruction prejudicial to appellant? We have endeavored to analyze the effect of the giving of said instruction, and in doing so, we have assumed that the jury found that respondent was guilty of contributory negligence and have further assumed that the jury attempted to apply said instruction rather than the rules embodied in the correct instructions which were also given. Applying the erroneous rule set forth in the last-mentioned instruction, we obtain some startling results. Said instruction directs a reduction of the verdict in certain proportions. If the negligence attributable to plaintiff is one-third and the negligence attributable to defendant is two-thirds, then the reduction under said instruction would be in the proportion of one to two or one-half. Plaintiff would therefore obtain a verdict of only $15,000 as against $20,000 which he would obtain under the correct rules above set forth. If the negligence attributable to plaintiff is one-half and the negligence attributable to defendant is one-half, then the reduction under said instruction would be in the proportion of one to one, which would give a result of a reduction of one. Such reduction would wipe out the entire recovery, whereas plaintiff would be entitled to recover $15,000 under the correct rules. Likewise, if the negligence attributable to plaintiff is greater than the negligence attributable to defendant, the reduction provided in the erroneous instruction would result in barring any recovery whatever rather than giving plaintiff the proportionate amount to which he is entitled. It is our conclusion that the error in the giving of said erroneous instruction could only have resulted in a verdict more favorable to appellant than a verdict reached by applying the correct rules. Therefore appellant may not complain.

We have discussed this question at some length because of the authorities cited by appellant. A similar instruction was criticised in *Norfolk & Western Ry.* v. *Earnest, supra,* but the court did not declare said instruction prejudicial. On the contrary, it said on page 122 (229 U. S.) that "possibly it was not prejudicial to defendant". However, in *Cross* v. *Chicago, B. & Q. R. Co.,* 191 Mo. App. 202 [177 S. W. 1127], a similar instruction was treated as prejudicial to the defendant. We have carefully examined said opinion and cannot escape the conclusion that the views of the court in that case were based on certain erroneous computations regarding the results which would be reached by applying the erroneous instruction.

■ The last heading in appellant's brief is "Misconduct of Counsel". It relates to a portion of the argument of respondent's counsel to the jury. The statement of respondent's counsel was immediately assigned as misconduct and the trial court promptly instructed the jury to disregard it. Respondent argues that there was no misconduct in these remarks, but assuming that there was, we believe that the effect thereof was cured by the trial court's admonition and that appellant suffered no prejudice. The trial court was of that opinion, as it denied appellant's motion for a new trial. The conclusion of the trial court on this question should not be disturbed unless it appears under all the circumstances to be plainly wrong. (*Lafargue* v. *United Railroads,* 183 Cal. 720 [192 Pac. 538]; *Aydlott* v. *Key System Transit Co.,* 104 Cal. App. 621 [286 Pac. 456].) We find nothing to indicate that the court's conclusion was not entirely correct.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 18, 1935, and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing presents but one point which requires comment. Appellant challenges, as an incorrect statement of the law, that portion of the opinion in which we stated that the decisions of the federal courts were controlling. This proposition seems to be well

settléd. (*Hoogbruin* v. *Atchison etc. Ry. Co.*, 213 Cal. 582 [2 Pac. (2d) 992]; *Hines* v. *Industrial Acc. Com.*, 184 Cal. 1 [192 Pac. 859, 14 A. L. R. 720]; *Smithson* v. *Atchison etc. Ry. Co.*, 174 Cal. 148 [162 Pac. 111].) We therefore made no reference in the opinion to the case of *Webber* v. *Bank of Tracy*, 66 Cal. App. 29 [225 Pac. 41], which appellant claims is the controlling authority upon this appeal. Appellant cites and relies upon *Wood* v. *Chicago, B. & Q. R. Co.*, 306 Ill. 217 [137 N. E. 806], and *Cincinnati, N. O. & T. P. Ry. Co.* v. *Swann's Admx.*, 160 Ky. 458 [169 S. W. 886, L. R. A. 1915C, 27], but, in so far as those cases tend to support appellant's contention, they can no longer be accepted as authority. (*Chesapeake & Ohio Ry. Co.* v. *Stapleton*, 279 U. S. 587 [49 Sup. Ct. 442, 73 L. Ed. 861].)

The petition for rehearing is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 14, 1935.